**E-FILED**
Monday, 17 March, 2008  04:55:29 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL STEVENSON, Inmate #N93569, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-3108 |
| | ) | |
| DR. SCHOLZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, MELODY FORD, DEBORAH FUQUA, TARA GOINS,

STEVEN VANSTRIEN, ROGER E. WALKER, JR., and ROGER ZIMMERMAN, by and

through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and hereby

submit their Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff, Michael Stevenson, is an inmate currently incarcerated within the Illinois

Department of Corrections.  Plaintiff filed a 42 U.S.C. Section 1983 complaint on May 14,

2007 alleging that Defendants were deliberately indifferent to his serious medical needs.

Specifically, Plaintiff alleges that he was seen by Dr. Scholz on July 5, 2007 and was told that

he needed to request a transfer to a different facility in order to have access to a dental

hygienist for his gingivitis.  (Complaint, ¶1.).  Plaintiff claims that Defendants Zimmerman,

Walker, Ford, Fuqua, Goins, and VanStrien were deliberately indifferent to his medical needs

because they "had the power and opportunity to intervene and correct and/or remedy said

claims of medical dental care yet did not." (Complaint, ¶2).  Aside from this statement,

1

Plaintiff does not assert specific allegations as to how Defendants were deliberately indifferent to his medical needs.

Plaintiff requested injunctive relief in the form of appropriate dental care for the treatment of gingivitis or transfer to a facility within the Illinois Department of Corrections. Plaintiff also requested unspecified punitive damages.  (Complaint, "Relief Requested").

On May 3, 2007, the Court conducted a 28 U.S.C. §1915A screening of Plaintiff's Complaint and determined that Plaintiff stated an Eighth Amendment claim for deliberate indifference to his serious medical needs.  (Doc. 4).

Defendants deny that they were deliberately indifferent to Plaintiff's medical needs. Defendants further deny that their actions or that their reliance on the opinion and judgment of medical professionals constituted a deliberate indifference to Plaintiff's medical needs. Defendants assert that Plaintiff has failed to prove the personal involvement of Defendant Walker, and Plaintiff has also failed to prove that Defendants violated his Eighth Amendment rights.  Plaintiff's dissatisfaction with the medical care he received, and continues to receive, does not constitute deliberate indifference to his medical needs.  Finally, Plaintiff has no evidence to support his claims of deliberate indifference on behalf of Defendants.  Therefore, Defendants believe that summary judgment should be granted in their favor and against the Plaintiff.

## I.  UNDISPUTED MATERIAL FACTS

1.    Plaintiff is currently incarcerated at Illinois River Correctional Center.  (Exhibit A, Ford Affidavit, ¶4).

2.    Defendant Walker is the Director of the Illinois Department of Corrections.

2

3.      Defendant Walker did not receive or review Plaintiff's grievances, including grievances he filed in regards to medical or dental care.  (Exhibit A, ¶ 9).

4.      The grievances referred to in Plaintiff's complaint were signed by Defendant Walker's designee.  (Exhibit A, ¶ 9).

5.      Melody Ford is a Chairperson with the Office of Inmate Issues for the Illinois Department of Corrections.  (Exhibit A, ¶ 2).

6.      Defendant Ford responded to Plaintiff's grievance on February 27, 2007 stating that his issue was appropriately addressed by the institutional administration.  (Exhibit A, ¶ 6).

7.      Defendant Ford also responded to Plaintiff's grievance regarding his dental care and treatment on April 2, 2007, and denied the grievance on the basis that Plaintiff's issue was appropriately addressed by the institutional administration.  (Exhibit A, ¶ 7).

8.      Defendant Ford's review of Plaintiff's records indicated that he had been seen on several occasions by a dentist and the dentist had determined that the problems concerning Plaintiff were not emergent.  Therefore, it was Defendant Ford's understanding that Mr. Stevenson was receiving dental treatment and his grievance should be denied.  (Exhibit A, ¶ 7).

9.      Defendant Ford's only other correspondence with Plaintiff included a "Return of Grievance Correspondence" signed and dated January 19, 2007 informing Plaintiff that he needed to file the appropriate documents for a review of his grievances.  (Exhibit A, ¶ 8).

10.     Roger Zimmerman was the Warden of Western Illinois Correctional Center from February 1, 2006 until May 16, 2007.

11.     Aside from responding to Plaintiff's grievances, Defendant Zimmerman did not have any personal involvement in the facts alleged in Plaintiff's complaint.  (Exhibit B, Zimmerman Affidavit, ¶4).

12.     Defendant Zimmerman denied Plaintiff's September 12, 2006 grievance on the basis that the plaintiff had seen a dentist and the dentist did not present a need for Plaintiff to receive outside treatment.  (Exhibit B, ¶5).

13.     Defendant Zimmerman denied Plaintiff's October 6, 2006 grievance as an emergency on the basis that Plaintiff's grievance did not substantiate an emergency.  (Exhibit B, ¶6).

14.     Defendant Zimmerman expedited Plaintiff's December 12, 2006 grievance that was filed as an emergency grievance.  (Exhibit B, ¶7).

15.     Defendant Zimmerman subsequently denied Plaintiff's December 12, 2006 grievance on the basis that the dentist had determined his dental issues were not emergent.  (Exhibit B, ¶8).

16.     If medical personnel had determined Plaintiff needed medical treatment, they would have provided it to him.  (Exhibit B, ¶9).

17.     Defendant Zimmerman was not present during any of Plaintiff's treatment, and he did not have any personal involvement in the diagnosis, treatment or medical care received by Plaintiff.  (Exhibit B, ¶11).

18.     Defendant Zimmerman did not meet with Plaintiff to discuss the issues set forth in his grievances or his complaint.  (Exhibit B, ¶12).

19.     Deborah Fuqua is the Health Care Unit Administrator at Western Illinois Correctional Center.  (Exhibit C, ¶ 1).

4

20.    Defendant Fuqua is not licensed to provide dental care and treatment to inmates. (Exhibit C, Fuqua Affidavit, ¶2). Additionally, Defendant Fuqua cannot override the medical decisions of the doctors or dentists in the Health Care Unit. (Exhibit C, ¶2).

21.    Defendant Fuqua does not recall speaking with Defendant VanStrien regarding Plaintiff's complaints about his medical care in September of 2006. (Exhibit C, ¶4).

22.    However, if a Correctional Counselor contacts Defendant Fuqua regarding an inmate's complaints about his dental care, Defendant Fuqua reviews the dental records to see whether or not the inmate received treatment. Defendant Fuqua would next report on her review of the dental records to the Correctional Counselor. (Exhibit C, ¶4).

23.    Defendant Fuqua would not have determined whether or not the a grievance be upheld or denied, and she did not have the authority to make that decision. (Exhibit C, ¶4).

24.    Defendant Fuqua did not personally meet with Plaintiff to discuss his concerns regarding his dental care, nor did she have any direct involvement in any medical decisions concerning Plaintiff. (Exhibit C, ¶5, Exhibit F, p. 32, lines 18-19).

25.    Tara Goins is a Grievance Officer at Western Illinois Correctional Center. (Exhibit D, ¶ 1).

26.    Part of Defendant Goins's responsibilities include responding to inmate grievances. Defendant Goins can only recommend that a grievance be upheld or denied. The final determination of an inmate's grievance is made by the Warden. (Exhibit D, ¶2).

27.    Defendant Goins reviewed Plaintiff's grievances dated September 13, 2006 and December 12, 2006. (Exhibit D, ¶4).

28.    Defendant Goins recommended Plaintiff's September 13, 2006 grievance be denied after considering the Plaintiff's grievance wherein he stated he had been to the dentist twice about problems with his gums, and the Counselor's response dated October 5, 2006, which stated that the inmate had been seen on October 3, 2006 and that the dentist found there was no need for outside consult.  (Exhibit D, ¶5).

29.    Defendant Goins reviewed Plaintiff's grievance dated December 12, 2006 and recommended the grievance be denied on the basis that Plaintiff had been seen in the dental unit on July 5, 2006, August 6, 2006, and October 3, 2006, and was requesting to be transported to a dentist outside of the correctional facility or to a facility that was equipped to provide medical and dental treatment.  (Exhibit D, ¶6).

30.    Dr. Scholz responded to Plaintiff's December 12, 2006 grievance by a  report that stated Plaintiff's problems were not emergent.  (Exhibit D, ¶7).

31.    Defendant Goins also referenced the Offender Tracking System ("OTS") to determine whether or not Plaintiff was eligible for a transfer.  OTS indicated that Plaintiff had been at Western Illinois Correctional Center for six months and was eligible to request a transfer through his counselor.  (Exhibit D, ¶8).

32.    Based on a review of the information provided to her, Defendant Goins recommended that Plaintiff's grievance be denied on December 28, 2006.  (Exhibit D, ¶9).

33.    When evaluating inmate medical grievances, Defendant Goins bases her decisions upon the information included in the inmate's grievance and the responses from the medical professionals at the correctional facility.  Because Plaintiff was receiving medical care, there was nothing more Defendant Goins could have done for him.  (Exhibit D, ¶10).

34.     Defendant Goins did not have any personal involvement in the diagnosis, treatment of medical or dental care that Plaintiff received at Western Illinois Correctional Center.  (Exhibit D, ¶11).

35.     Steven VanStrien is a Correctional Counselor II at Western Illinois Correctional Center.

36.     Defendant VanStrien's job responsibilities include responding to inmate grievances.  (Exhibit E, ¶2).

37.     Defendant VanStrien typically contacts the Health Care Unit when responding to inmate grievances regarding medical care and treatment.  (Exhibit E, ¶2).

38.     Defendant VanStrien responded to Plaintiff's September 13, 2006 grievance on October 5, 2006.  Defendant VanStrien consulted with Defendant Fuqua and was informed that basic dental cleanings were not performed at Western Illinois Correctional Center due to no dental hygienist.  Additionally, the dentist stated that there was no need for outside consult.  (Exhibit E, ¶4).

39.     Plaintiff's grievance was returned to him with Defendant VanStrien's response. Plaintiff was receiving medical care and there were no additional steps Defendant VanStrien could have taken.  (Exhibit E, ¶4).

40.     Defendant VanStrien did not have any personal involvement in the medical care received by Plaintiff, and is not licensed to provide dental care and treatment.  (Exhibit E, ¶6).

41.     Plaintiff was diagnosed with gingivitis on July 5, 2006.  (Exhibit F, Plaintiff's Deposition Transcript, p. 5, lines 14-16).

42.     It is Plaintiff's understanding that his teeth should have been root planed or scaled to alleviate his gingivitis.  (Exhibit F, p. 10, lines 14-16).

43.     Plaintiff's teeth have been scaled.  (Exhibit F, p. 11, lines 8-11).

44.     Plaintiff does not have any current problems associated with his teeth.  (Exhibit F, p. 14, lines 2-4).

45.     Currently, Plaintiff's gums are not swollen and he is not experiencing any bleeding.  (Exhibit F, p. 20, lines 4-7).

46.     Plaintiff is suing Defendant Zimmerman because he feels Defendant Zimmerman could have made sure Plaintiff received treatment for his gingivitis.  (Exhibit F, p. 26, lines 8-14).

47.     Plaintiff is suing Defendant Ford because she reviewed Plaintiff's grievance and recommended that it be denied.  (Exhibit F, p. 30, lines 13-17).

48.     Plaintiff is suing Defendant Fuqua because her responses to Plaintiff's grievances indicated that he was seen by the dentist and that cleaning was not performed at Western Illinois Correctional Center.  (Exhibit F, p. 33, lines 18-24, p. 32, lines 1-5).

49.     Plaintiff is suing Defendant Goins because she could have done more than she did rather than relying on Plaintiff's grievance and the grievance reports.  (Exhibit F, p. 33, lines 12-24).

50.     Plaintiff feels he should have had access to certain dental products, but he never asked any of the defendants to provide him with these products.  (Exhibit F, pp. 37-38).

51.    Plaintiff believes the Defendants could have recommended treatment be given to him by Dr. Scholz or someone other than Dr. Scholz or override Dr. Scholz's opinion. (Exhibit F, pp. 38-39).

52.    Plaintiff did not request a transfer from any of the Defendants in 2006. (Exhibit F, p. 46).

52.    Plaintiff's request for a transfer to Illinois River Correctional Center was approved on July 27, 2007. (Exhibit F, pp. 44-45, p. 46).

## II.  ARGUMENT

## 1.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant.  Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.1986). Yet not every conceivable inference must be drawn, only reasonable inferences.  Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312-13 (7th Cir.1986).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the United States Supreme Court held that summary judgement is mandatory if there is no genuine issue as to any material fact for trial if, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

9

case, and on which that party will bear the burden of proof at trial." Id. at 323. The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the finder of fact to find in Plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the Plaintiff. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994); International Union of Operating Engineers v. Associated General Contractors, 845 F.2d 704, 708 (7th Cir. 1988).

**2.     DEFENDANT WALKER WAS NOT PERSONALLY INVOLVED IN ANY VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

Liability under 42 U.S.C. §1983 must be based on a defendant's personal involvement in the alleged constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Thus, an individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional violation. McBride v. Soos, 679 F.2d 1223, 1227 (7th Cir. 1982). Some causal connection or affirmative link between the action complained about and the official sued is necessary in order for a plaintiff to recover under § 1983. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). "Section 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 102 S.Ct. 445, 453 (1981). A supervisory official can be liable only for his own misconduct, not that of those under his supervision. Duckworth v. Franzen, 780 F.2d 645 (7th Cir. 1985). Thus, a supervisory official must be personally involved in the alleged conduct to be liable. Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

Plaintiff has failed to prove Defendant Walker's personal involvement in Plaintiff's medical care or the grievance process such that Plaintiff could recover under his Section 1983 claims. Plaintiff's claims in his complaint that Defendant Walker was informed of Plaintiff's complaints through grievances and failed to correct or remedy Plaintiff's claims

regarding his dental care.  (Complaint, ¶2).  Defendant Walker delegates his responsibilities regarding the review of inmate grievances and complaints.  The signatures that appear on Plaintiff's grievance responses from the Administrative Review Board do not belong to Defendant Walker, but rather, to subordinates of Defendant Walker.  Defendant Walker had no knowledge regarding Plaintiff's medical condition or complaints of improper medical care as this information would have been reviewed by a designee of Defendant Walker. Therefore, summary judgment should be entered in favor of Defendant Walker due to his lack of personal involvement in any of the events concerning Plaintiff's medical care.

3.    **DEFENDANTS FUQUA, GOINS, VANSTRIEN, AND ZIMMERMAN ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS.**

In order to establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).   Deliberate indifference requires the prison official to act with a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) *quoting* Wilson v. Seiter, 501 U.S. 294, 297 (1991).  Therefore, a prison official cannot be liable under the Eighth Amendment "unless he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer at 847 (1994).  A prison official must reasonably respond to a prisoner's complaints, through the investigation and referral of a plaintiff's complaints, in order to be insulated from liability. Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir. 2006).  Otherwise, "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that this prisoner is in capable hands."  Spruill v. Gillis, 372 F.3d 218 (3rd Cir.

11

2004).  The Eighth Amendment does not provide that an inmate is entitled to demand specific care, nor does it entitle him to the best care available.  Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).

While the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody with a medical care system that meets minimal standards of adequacy," (Meriwether v. Faulkner, 821 F.2d 408, 411 (7th Cir. 1987)), inmates are not entitled to unqualified access to health care.  Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992); see also Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991).  "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition."  Snipes v. Detella, 95 F.3d 586, 592 (7th Cir. 1996).  Finally, prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment.  McEahern v. Civiletti, 502 F. Supp. 531, 534 (N.D. Ill. 1980); see also Allen v. City of Rockford, 349 F. 3ed 1015, 1020 (7th Cir. 2003) (Government employees are entitled to rely on a physician's determination of the best way to treat a patient).  Accordingly, a non-medical prison official is entitled to summary judgment on a claim of deliberate indifference when he or she reasonably responds to an inmate's complaint of grievance by ensuring the inmate has been evaluated by a physician and received medical care for the complained of condition.  Johnson v. Doughty, 433 F.3d 1001, 1010-1012 (7th Cir. 2006).

Plaintiff's Complaint claims that Defendants were deliberately indifferent to his serious medical needs.  Specifically, Plaintiff stated in his complaint that Defendants had "the power and opportunity to intervene and correct and/or remedy said claims of medical dental care

12

yet did not." (Complaint, ¶2). Plaintiff claims Defendants' actions amount to a violation of his Eighth Amendment rights. (Complaint, ¶2). Defendants are entitled to summary judgment on Plaintiff's claims of deliberate indifference.

### A.     DEFENDANT FORD

Plaintiff is suing Defendant Ford in her official capacity. Plaintiff's claims against Defendant Ford lack merit. Aside from responding to Plaintiff's grievances, Defendant Ford had no personal involvement with Plaintiff's claims. The fact that Defendant Ford denied Plaintiff's grievances does not constitute deliberate indifference to Plaintiff's medical care or needs. Furthermore, Defendant Ford did not have the training or authority to override medical decisions prescribed by trained medical professionals. Accordingly, Defendant Ford is entitled to summary judgment on Plaintiff's claim of deliberate indifference as to his medical needs.

### B.     DEFENDANT ZIMMERMAN

Plaintiff is suing Defendant Zimmerman in his official capacity. Plaintiff's claim of deliberate indifference on the part of Defendant Zimmerman is also without merit. Given the fact that Defendant Zimmerman is not a medical professional and that Plaintiff was receiving dental care, Defendant Zimmerman reasonably relied on the judgment of medical staff and concluded Plaintiff was receiving treatment as prescribed by a licensed medical professional. Plaintiff's dissatisfaction with his dental care does not amount to a Constitutional violation. While Plaintiff asserts he was entitled to a transfer or additional dental care products, he requested neither from Defendant Zimmerman or the remaining Defendants. Furthermore, the fact that Defendant Zimmerman denied Plaintiff's grievances while relying on information provided by licensed medical professionals does not amount to deliberate indifference.

Accordingly, Defendant Zimmerman is entitled to summary judgment on Plaintiff's claim of deliberate indifference as to his medical needs.

### C.    DEFENDANT FUQUA

Plaintiff is suing Defendant Fuqua in her official capacity.  Plaintiff takes issue with Defendant Fuqua's responses to his grievances and claims that her actions amounted to deliberate indifference.  Plaintiff cannot substantiate his claims for deliberate indifference against Defendant Fuqua.  In Defendant Fuqua's response to Plaintiff's grievance, she consulted Plaintiff's dental records and concluded that Plaintiff was receiving treatment and that the dentist had determined Plaintiff's issues were not emergent.  Defendant Fuqua did not personally meet with Plaintiff, she did not treat Plaintiff for his dental needs, nor was she licensed as a dentist to treat Plaintiff.  Additionally, Defendant Fuqua did not determine whether or not Plaintiff's grievance would be upheld or denied.  Her only involvement included responding to Plaintiff's grievances.  It is not a constitutional violation that Plaintiff did not like the dental care he received and continues to receive.  Therefore, Defendant Fuqua is entitled to summary judgment on Plaintiff's claim of deliberate indifference to his medical needs.

### D.    DEFENDANTS GOINS AND VANSTRIEN

Plaintiff is suing Defendants Goins and VanStrien in their official capacities. Plaintiff's claims as to Defendants Goins and VanStrien cannot support a claim of deliberate indifference.  Defendants are not medical professionals.  Defendant VanStrien only responded to Plaintiff's September 13, 2006 grievance and consulted with medical staff in order to respond.  Defendant Goins reviewed Plaintiff's September 13, 2006 and December 12, 2006 grievances and consulted with medical staff at Western Illinois Correctional Center

14

to ensure Plaintiff was receiving dental care.  Defendants did not have the training, certification or authority to provide Plaintiff with dental care or override medical decisions prescribed by trained professionals.  The fact that Defendant Goins did recommend Plaintiff's grievance not be upheld does not constitute deliberate indifference to Plaintiff's dental care or needs.  Accordingly, Defendants Goins and VanStrien are entitled to summary judgment on Plaintiff's claim of deliberate indifference to his medical needs.

### 4.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.

Federal courts may only grant injunctive relief upon a finding that an ongoing constitutional violation exists.  *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). Plaintiff has both received dental care for the treatment of gingivitis as well as a transfer to a prison other that Western Illinois Correctional Center rendering his request  for injunctive relief moot.  As such, Plaintiff is not entitled to injunctive relief because there is no evidence of an ongoing constitutional violation.

Furthermore, injunctive and other equitable relief can be granted against a state official without violating the Eleventh Amendment when the official is acting in violation of the Federal Constitution.  Ex parte Young, 209 U.S. 123, 159 (1908).  However, any equitable relief granted must be prospective in nature.  Edelman v. Jordan, 415 U.S. 651 (1974).  Any relief, even if labeled as some form of "equitable restitution," violates the Eleventh Amendment if it has some retroactive effect on a state's funds.  Id. at 668-9.  Therefore, because Plaintiff's request for injunctive relief is moot, and he is not entitled to injunctive relief.

15

5.    **CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT.**

A suit against a State employee in his or her official capacity rather than in his or her individual capacity is a suit against the State. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The law is well-settled that suits against State employees acting in their official capacities are barred by the Eleventh Amendment unless the State consents. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974), reh'g denied, 416 U.S. 1000; Duckworth v. Franzen, 780 F.2d 645, 649 (7th Cir. 1985), cert. denied, 479 U.S. 816. This is true even though the State is not named as a party to the action. Edelman v. Jordan, 415 U.S. 651, 663.

Plaintiff's claims against Defendants for actions taken in their official capacity are equivalent to suing the State of Illinois and, therefore, are barred by the Eleventh Amendment.

6.    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

To the extent Plaintiff is suing Defendants in their individual capacities, Defendants are entitled to qualified immunity. In order to defeat a claim of qualified immunity, a plaintiff must prove the defendant(s) violated a constitutional right clearly established at the time of the alleged misconduct. McGrath v. Gillis, 44 F.3d 567, 670 (7th Cir. 1995). Plaintiff has the burden of establishing the existence of a clearly established constitutional right. Id. at 570 (citing Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988). Clearly established rights must be proven through closely analogous cases. Id. at 570. Therefore, through qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

16

Plaintiff failed to show that Defendants had any notice of a clearly established constitutional right which they allegedly violated.  In this case, Plaintiff was seen by a licensed dentist who determined that Plaintiff did not require an outside consult and that Plaintiff's condition was not emergent.  Plaintiff was provided with access to medical care, and was subsequently transferred to another facility at his request. Defendants are not in violation of Plaintiff's constitutional right against cruel and unusual punishment.  Defendants know of no other case law that would have put them on notice that their alleged conduct would have violated Plaintiff's constitutional rights.  As such, Defendants are entitled to qualified immunity.

WHEREFORE, for the above and forgoing reasons, Defendants respectfully request that this Honorable Court enter summary judgment in their favor and grant any further relief the Court deems necessary and proper.

Respectfully submitted,

MELODY FORD, DEBORAH FUQUA, TARA GOINS, STEVEN VANSTRIEN, ROGER E. WALKER, JR., and ROGER ZIMMERMAN,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois

By:  s/ Ellen C. Bruce
    Ellen C. Bruce, #6288045
    Assistant Attorney General
    Attorney for Defendants
    500 South Second Street
    Springfield, Illinois  62706
    Telephone:  (217) 782-9026
    Facsimile:   (217) 524-5091
    E-Mail:  ebruce@atg.state.il.us

17

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MICHAEL STEVENSON, Inmate #N93569, )
                                   )
              Plaintiff,           )
                                   )
       vs.                         )            No. 07-3108
                                   )
DR. SCHOLZ, et al.,                )
                                   )
              Defendants.          )

**CERTIFICATE OF SERVICE**

        I hereby certify that on March 17, 2008, I electronically filed a Memorandum of Law in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Theresa Powell
        tpowell@hrva.com

and I hereby certify that on March 17, 2008, I mailed by United States Postal Service, the document to the following non-registered participant:

        Michael Stevenson, #N93569
        Illinois River Correctional Center
        Route 9 West
        Post Office Box 1900
        Canton, Illinois  61520

                              Respectfully Submitted,
                               s/ Ellen C. Bruce
                              Ellen C. Bruce, #6288045
                              Assistant Attorney General
                              Attorney for Defendants
                              500 South Second Street
                              Springfield, Illinois  62706
                              Telephone:  (217) 782-9026
                              Facsimile:   (217) 524-5091
                              E-Mail:  ebruce@atg.state.il.us

E-FILED
Monday, 17 March, 2008  04:56:07 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS            )            *Stevenson vs. Scholz, et.al.*
                             )            **USDC-CD-IL Case No. 07-3108**
COUNTY OF SANGAMON           )

### AFFIDAVIT

**I, Melody Ford,** being first duly sworn upon oath, state that I have personal knowledge of the facts set

forth herein, that I am competent to testify and if called to testify would state as follows:

1.    I am a Chairperson with the Office of Inmate Issues for the Illinois Department of Corrections ("the

Department") and have held this position since August 1, 2001.  As an Administrative Review Board

("ARB") Chairperson, my duties involve, among other things, review and respond to grievances filed by

Department inmates in the manner set forth herein.

2.    Inmates incarcerated within the Department may file grievances in accordance with Department Rule

504F: Grievance Procedures for Committed Persons.  Generally, an inmate must first attempt to resolve

grievances through his counselor.  If the grieved issue remains unresolved after such informal efforts, or

for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a

grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO").

The Grievance Officer may personally interview the inmate and/or other witnesses as deemed appropriate

and obtain relevant documents to determine the merits of the inmate's grievance.   Upon completion of

such investigation, the Grievance Officer's conclusions and if appropriate, recommended relief is

forwarded to the CAO.  The CAO, or CAO's designee's, decision is then submitted to the grieving

inmate.

3.    If, after receiving the CAO's decision the inmate feels the issue is unresolved, he may appeal in

writing to the Director of the Department by submitting the Grievance Officer's report and CAO's

decision.  The ARB, as the Director's designee, reviews the appeal and first determines whether the

inmate's grievance can be handled without the necessity of a hearing.  If so, the inmate is so advised.

Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining

relevant documents and at the ARB's discretion, calling witnesses.  The ARB submits a written report of

its findings and recommendations to the Director or Director's designee who then reviews the report and

EXHIBIT

A

makes a final determination on the grievance. A copy of the ARB's report and the Director's final

decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in

the ARB's files. Department Rule 504F: Grievance Procedures for Committed Person provides no further

means for review beyond this step.

4.    Michael Stevenson (#N93569) is currently incarcerated at Illinois River Correctional Center.

5.    At the request of the Attorney General's Office, a thorough search of ARB records has been

conducted regarding the records of Mr. Stevenson (#N93569).

6.    Mr. Stevenson's records indicate I responded to a grievance regarding his dental care and treatment

on February 27, 2007. In this response, I denied Mr. Stevenson's grievance stating that the issue was

appropriately addressed by the institutional administration. (Attached as "Group Exhibit 1").

7.    Mr. Stevenson's records indicate that I also responded to a grievance regarding his dental care and

treatment on April 2, 2007. In this response, I again denied Mr. Stevenson's grievance stating that the

issue was appropriately addressed by the institutional administration. (Group Exhibit 1). My review of

Mr. Stevenson's records showed that he had been seen on several occasions by a dentist and that the

dentist determined his problems concerning his teeth were not emergent. Therefore, it was my

understanding that although Mr. Stevenson was dissatisfied with his dental care and treatment, he was

receiving dental treatment and his grievance should be denied.

8.    My only other correspondence with Mr. Stevenson included a "Return of Grievance

Correspondence" that I signed and dated on January 19, 2007. Mr. Stevenson's correspondence was

returned because he did not include the Committed Person's Grievance Report, DOC 0047, and he did not

provide a copy of the Committed Person's Grievance, DOC 0046. Additionally, I added comments that

the older grievances were past the timeframe outlined in Department Rule 504. (Group Exhibit 1).

9.    Director Roger Walker did not receive or review Mr. Stevenson's (#N93569) grievances, including

grievances he filed in regards to medical or dental carecare. The grievances referred to in Mr.

Stevenson's complaint would have been signed by a designee of Director Walker, namely, Terri

Anderson, Manager of the Office of Inmate Issues.

I have read the foregoing and affirm that the facts herein are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

_Melody Ford_

Melody Ford

SUBSCRIBED AND SWORN TO

Before me this __4th__ day of March, 2008

_Margaret E. Baugher_

NOTARY PUBLIC

OFFICIAL SEAL
MARGARET E. BAUGHER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-5-2011

Date: 10-3-06  Offender: Broadnax, Michael L  ID# N-93569
(Please Print)

Present Facility: W.I.C.C.   Facility where grievance issue occurred: W.I.C.I.C.

## NATURE OF GRIEVANCE

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☐ Staff Conduct    ☐ Dietary    ☑ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify): _____

☐ Disciplinary Report: ___/___/___  _____
                 Date of Report         Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

     Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     Chief Administrative Officer, only if EMERGENCY grievance.
     Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** I've been to the dentist twice about the Problems with my Gums. They are bleeding and swollen but the dentist says that it's nothing that he can do here and that they don't clean teeth. What ever the Problem is I feel as though I'm being denied medical treatment, my gums bleed every day and the pain is some times unbearable. Can you Please give me some kind of treatment?

**Relief Requested:** That I recieve some kind of treatment

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____  _____  _____
Offender's Signature        ID#       Date
(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: 9, 20, 06    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: D. Figue states that I'm was seen on 10-3-06. Cleanings (Basic) are not performed at WICC due to no dental Hygenist. Dentist states no need for outside consult.

Van Stries        Van Sm       10, 5, 06
Print Counselor's Name      Counselor's Signature      Date of Response

---

### EMERGENCY REVIEW

Date Received: ___/___/___

Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
                ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____  _____
Chief Administrative Officer's Signature      Date

**RECEIVED**
**JAN 1 1 2007**
OFFICE OF INMATE ISSUES

RECEIVED
OCT 15 2006
WESTERN ILLINOIS C.C.
GRIEVANCE OFFICER

Distribution: Master File; Offender      ILLINOIS DEPARTMENT OF CORRECTIONS      Page 1      DOC 0046 (Rev. 3/2005)
Printed on Recycled Paper

GROUP EXHIBIT 1

# RESPONSE TO OFFENDER'S GRIEVANCE

## Grievance Officer's Report

Date Received: October 15, 2006 _____ Date of Review: October 17, 2006 _____ Grievance # (optional): 06-0728 _____

Offender: Michael Stevenson _____ ID#: N93569 _____

**Nature of Grievance:** Inmate is grieving medical-dental.

**Facts Reviewed:** Inmate's grievance reviewed. Inmate states that he has been to the dentist twice about the problems with his gums. He states they are bleeding and swollen and the dentist states there is nothing that can be done about it here and that they do not clean teeth here. Inmate requests some type of treatment.

Counselor's response dated 10-5-06 by CCII VanStrien states that D. Fuqua, HCUA, states that inmate was seen on 10-3-06. Cleanings (basic) are not performed at WICC due to no dental hygienist. Dentist states no need for outside consult.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be ~~denied~~. denied.

_____                                  _____
Tara Goins                                                        Grievance Officer's Signature
Print Grievance Officer's Name
**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

## Chief Administrative Officer's Response

Date Received: 10-18-06 _____   ☑ I concur   ☐ I do not concur   ☐ Remand

Comments:

RECEIVED
JAN 11 2007
OFFICE OF
INMATE ISSUES

_____                                  10-18-06
Chief Administrative Officer's Signature                          Date

## Offender's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Michael L. Stevenson    N-93569    Oct, 29/06
Offender's Signature                ID#            Date

**Rod R. Blagojevich**
Governor

## Illinois
### Department of
## Corrections

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

February 27, 2007

Michael Stevenson
Register No. N93569
Western Illinois Correctional Center

Dear Mr. Stevenson:

This is in response to your grievance received on November 6, 2006, regarding medical treatment (teeth cleaning not ordered, due to no hygienist on staff), which was alleged to have occurred at Western Illinois Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report, 06-720, and subsequent recommendation dated October 17, 2006 and approval by the Chief Administrative Officer on October 18, 2006 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration.  It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:  Warden Roger Zimmerman, Western Illinois Correctional Center
Michael Stevenson, Register No. N93569
Chron. File

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

2 B14

| Date: 10-6-06 | Committed Person: (Please Print) STEVENSON | ID#: N-93569 |
|---|---|---|

| Present Facility: WICC | Facility where grievance issue occurred: WICC |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☑ Medical Treatment
- ☐ Disability
- ☐ Other (specify): _____

- ☐ Disciplinary Report: ____/____/____
  Date of Report                    Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves a discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

Brief Summary of Grievance: On several ~~reasons~~ occasions I made complaints to the Dentist Informing Him that gums bleed regularly and that my gums and teeth are in Pain. I also let him know that as a result of my Problems, it's becoming difficult for me to Process my Food. THE Problem Has worsen and Has yet to be address by the Dentist. He claims that I need to see a Hygenist (which was Dont Have) but states that my Problem dont need outside counsel. 730 ILCS 5/3-7-2 (d) states

Relief Requested: THAT I recieve $10,000 A DAY entile I am seen by ~~the~~ A Hygenist as recommended by O. Fuqua (WICC Dentist) Starting from counselor Response Date (10-5-06)

*written along right margin: For Privous Grievance written on (9-13-06)*

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Michael L. Stevenson | N-93569 | 10, 6, 06 |
|---|---|---|
| Committed Person's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____
_____
_____
_____
_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: 10, 10, 06

Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
☑ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

*(stamp)* RECEIVED JAN 11 2007 OFFICE OF ISSUES

| _____ | 10, 10, 06 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Distribution: Master File; Committed Person            DOC 0046 (Eff. 10/2001)
(Replaces DC 5657)
Printed on Recycled Paper

**COMMITTED PERSON'S GRIEVANCE (Continued)**

That All institutions and Facilities of the Dept. Shall Provide every committed Person with medical and dental care. BAsed on the Dentist recomendations my dental needs are being restricted. As Far as I know a Dental Hygenist cleans teeth, my Problem is with bleeding and Painful gums and teeth. The bottom line is that the Dentist recanize that I ~~have a~~ Have a issue that cant be resolved at WICC but also says that there is no need for outside Counsel. The Dentist has also told me that there are more serious Problems here at WICC. However the statue says that all ~~a~~ committed Persons shall be Provided with medical and Dental Care, not Just the more serious. Again Just to make clear, my gums are swollen, bleeding and in Pain.

RECEIVED

JAN 17

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

Page #1 of 3

| Date: 12-12-06 | Offender: (Please Print) Stevenson, michael | IDOC #: N-93569 |

| Present Facility: Western Illinois | Facility where grievance issue occurred: Western Illinois |

**NATURE OF GRIEVANCE:** (Poisened Blood) Grossly Inadequate

- ☐ Personal Property
- ☐ Mail Handling
- ☐ Restoration of Good Time
- ☐ Disability — Medical Treatment
- ☒ Staff Conduct
- ☐ Dietary
- ☒ Medical Treatment
- ☐ HIPAA
- ☐ Transfer Denial by Facility
- ☐ Transfer Denial by Transfer Coordinator
- ☒ Other (specify): Incomplete Distorted Misinformed Responses/Reports
- ☐ Disciplinary Report: ____/____/____
  Date of Report       Facility where issued

DR415 violations

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** Upon entering Western Correctional Center, grievant immediately submitted Numerous request to the Health Care Unit for "Emergency" (dental care). Finally, on 7-5-06 he were called to the dental unit, where he explained and showed his chronic need for immediate medical treatment as his gums were bleeding perguisely with extreme pain and discomporting Gums, Jaw and Head pains. The treatment he recieved were Grossly inadequate and hurried in "Cursory Behavior." On 8-6-06 grievant

**Relief Requested:** Immediate Medical/Dental Care provide (Outside medical/Dental Treatment) Transferred to a Facility that is medically/Dentally equipted to Provide Grievant's Serious Medical

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self. Dental Treatment!

Michael F. Stevenson          N-93569  12.12.06
Offender's Signature              IDOC#        Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 12/13/06   Is this determination ☐ an emergency ☐ expedite emergency grievance; emergency is not substantiated.
Offender should submit this grievance in the normal manner.

RECEIVED DEC 1 3 2006 WESTERN ILLINOIS C.C.

_____    12/13/06
Chief Administrative Officer's Signature       Date

RECEIVED JAN 11 2007
OFFICE OF INMATE ISSUES

Distribution: Master File; Offender        Page 1        Printed on Recycled Paper        DOC 0046 (Rev. 3/2005)

Were called back to the dental unit after more complaints and request submitted, where he once again explained and showed his condition had worstened. He asked at that time if the dentist could or would at least cleanse his teeth ( a measure used to prevent further injuries) since no other medical treatments or dental treatments were getting performed. Dr. Schutte denied the request, stating " There is no one employed as a Hygienist' here at Western and I don't do cleanings". Grievant asked the Doctor/Dentist "How can you examine my mouth and find as clearly can be seen that I am in dire need of immediate medical/dental treatments yet because Western Correctional Center does not have the mandatory equiptments, nor medical Hygienist I am ignored and not even recommended to an outside care provider". He responded with shrugged shoulders — stating, "that's the way Western does things". We were asked to leave and if I experience more pains and problems put in a request. Once again grievant submitted a request slip as suggested. The chronic pains, headaches and ability of not being able to eat were unbearable. Finally, on 10-3-06 Dr. Schutte called grievant to the dental unit, where he examined his gums and teeth, "informing him "there's nothing we are equipted to perform with your serious conditions. Unfortunately; however, I suggest "you put in for a facility transfer to "get the treatments" you so desperately need." Grievant asked "why won't Western just take me to an outside hospital or dental center. Dr. Schutte stated, "I doubt that our budget will allow this"; grievant stated, "Oh so the whole ordeal is not so much of equiptment or Hygienist or you can't perform my treatments, it's a budget concern. How can you all's look deliberately my bleeding gums, notice the severe agonizing pains, headaches and mouth discomforts I'm experiencing over this long period of time "and only be concern with how much money to spend". Dr. Schutte asked me to leave, stating again "Submit for a transfer to get better dental treatments." Grievant continued to seek remedy for his serious medical/dental condition; however, denied any more responses. Therefore, he were forced to make a formal complaint through EDOC 504 grievance procedures. On 9-13-06 grievant submitted his complaint to clinical Services against the nature of medical treatment. He explained that

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 12-12-06 | Offender: (Please Print) Stevenson, michael | ID#: N-93569 |
|---|---|---|
| Present Facility: WesteRN Illinois | | Facility where grievance issue occurred: WesteRN Illinois |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify) _____

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report                     Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

**Brief Summary of Grievance:** he had been examined (twice) by Dr. Schotz,
who noted the serious bleeding and gum problems he were
suffering. Grievant explained in his complaint/grievance
of 9-13-06 also, how Dr. Schotz denied any medical-
dental treatment and preventive measures; such as clean-
ing his teeth/gums that would prevent further injuries
(degenerative gums and tooth decay — painfull, swollen gums,
inflammed gums — teeth loosening with profuse bleeding,
and uncontrollable headaches). On 10-5-06 a response

**Relief Requested:** SEE Front Page # 1 of 3

[X] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____  _____  _____
Offender's Signature              ID#              Date

(Continue on reverse side if necessary)

| **Counselor's Response (if applicable)** |
|---|
| Date Received: ____ / ____ / ____  [ ] Send directly to Grievance Officer  [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL. 62794-9277 |
| Response: _____ |
| _____ |
| _____ |
| _____ |
| _____ |
| _____  _____  _____ |
| Print Counselor's Name     Counselor's Signature     Date of Response |

| **EMERGENCY REVIEW** |
|---|
| Date Received: ____ / ____ / ____  Is this determined to be of an emergency nature?  [ ] Yes; expedite emergency grievance  [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
| _____  _____ |
| Chief Administrative Officer's Signature     Date |

**RECEIVED**

were made per: Counselor Van Strien who reported that Health Care Administrator Deborah Zugna states "I'm was seen on 10-3-06. Cleanings (basic) are not performed at WICC due to no dental hygienist. Dentist states no need for outside consult." (End of this response/Report)

On 10-15-06 / 10-18-06 grievance officer Tara Goins made a response/report identical to the response/report of Clinical Service Counselor Van Strien (See G/O Report) making a Recommendation grievance grievance be denied. Warden Roger Zimmerman concurred. 10-18-06.

These acts are deliberately committed in a sufficiently culpable state of mind. Each denial and distorted incomplete response/report constitutes a violation(s) of grievants guaranteed constitutional rights as an inmate in the Illinois Department of Corrections. These deliberate acts blatantly violate the established Laws of IDOC medical DR 415. Each Administrator in their proper protocol were, are and continues to be made aware of the serious medical/dental need. They have, and continue to be made aware of the failures to Provide Emergency Medical/Dental treatments (Including the urgent necessity to have an Outside medical/dental provider treat grievants serious condition. Each Administrator is, Have and Continues to be made aware how these denials Have and Continues to Cause unwanton inflictions of Pains — bleeding — headaches and degenerative gums: Knows Each one; (Warden Zimmerman - Health Care Administrator Deborah Zugna = Dr. Schutte the Dentist) Have made their own Rules against these established Government and State Law, for inmates of IDOC, grievant included, to deny him treatment for serious medical/dental conditions needing immediate attention.

In addition, how could Health Care Administrator make any type of statement as reported, as she only chose to report to the Counselor Von Strien 10-5-06 (the third visit grievant were examined by Dr. Schutte). Why did she not provide a complete report as the procedures of IDOC medical/Dental DR 415 request mandatory. In addition, the medical Records or grievants file are totally incomplete as to accurate reportings of all dental visits he were examined by Dr. Schutte, from the first visit of 7-5-06

ILLINOIS DEPARTMENT OF CORRECTIONS

| Date: 12-12-06 | Offender: (Please Print) Stevenson, michael | ID#: N-93509 |
|---|---|---|
| Present Facility: Western Illinois | Facility where grievance issue occurred: Western Illinois | |

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☐ Staff Conduct ☐ Dietary ☐ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify) _____
☐ Disciplinary Report: ___/___/___  
    Date of Report       Facility where Issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** 8-6-06 the second; prior to 10-3-06 the only visit/examination Deborah Gugua reported to the counselor for response to grievants grievance. These of best are continual acts of Dexterity. Grievants serious medical condition; warrants an immediate Outside Care providers treatment. For his gums are inflammed with excruciating pains, discomforts and headaches. It must be noted on the grievance Officers and counselors responses they each reported what Deborah Gugua said, not the

**Relief Requested:** SEE Front Page # 1 OF 3

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ _____ _____
Offender's Signature    ID#    Date
(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ___/___/___ ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____ _____ _____
Print Counselor's Name    Counselor's Signature    Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___ Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ _____
Chief Administrative Officer's Signature    Date

RECEIVED
JAN 1 '07
OFFICE OF INMATE ISSUES

ILLINOIS DEPARTMENT OF CORRECTIONS
Distribution: Master File; Offender    Page 1    DOC 0046 (Rev. 3/2005)
Printed on Recycled Paper

3)

Doctor/Dentist; stating "Dentist states No need for outside Consult" Where'n the Written report of Dr. Schitz who actually examined grievant, Not Deborah Irwin; it appear the Dentist has No authority in decision; However if you'd examine the report he wrote 10-3-06, he recorded he suggested I get a transfer to a facility better equiped to accommodate my medical/dental condition.

Use a person official(s) is aware of a "Serious Medical/Dental Need or Condition" and to diagnose of the same, yet denial and delays are commonly intentionally (regardless of a budget interest) these acts are Constitutional violations of both State and Federal Laws. This is deliberate indifference and must be corrected and treated medically Immediately without bias or retaliation.

Therefore, grievant request all the above, be immediately remedied and medically treated, including a facility transfer for the purpose of Medical Equipment and Provisions as Dr. Schitz has suggested to prevent further degeneration of gums, teeth decay, headaches, swollen and inflamed gums which cannot be treated at Western Corr. Ctr due to budget, lack of equipment and dental hygienist.

Medical (DR 415) Dental = Determine the issue:
⎯⎯⎯⎯ (1.) (grievant has not received
⎯⎯⎯⎯ (dental care).
⎯⎯⎯⎯ (2.) (Contact HCU Admin. - She
⎯⎯⎯⎯ (was - made incomplete report).
⎯⎯⎯⎯ (3.) (grievant is in compliance with
⎯⎯⎯⎯ (IDOC procedures).
⎯⎯⎯⎯ yet denied Serious Medical Treatment
For Dental Needs.

In addition, let it be Noted, Each dentist report of 7-5-06/ 8-6-06/ 10-3-06 were incomplete to all the facial and discussions between Dr. Schitz and Grievant. Dr. Schitz misinformed the records as to (all) the facts and only respected a very small amount of evidence he personally examined on each of grievants dental visits that would appear No Need to Remedy or prescribe treats. Why? yet made a recommendation for facility Transfer to get Adequate Dental Care. (See Attached Records

RESPONSE TO OFFENDER'S GRIEVANCE

### Grievance Officer's Report

MY COPY 4 OF 4

Date Received: December 13, 2006_____ Date of Review: December 28, 2006_____ Grievance # (optional): 06-0898E_____

Offender: Michael Stevenson_____ ID#: N93569_____

Nature of Grievance: Inmate is grieving medical treatment-dental.

Facts Reviewed: Emergency Grievance. Inmate's grievance reviewed. Inmate states that he has been requesting to receive emergency dental care. Inmate states that on 7-5-06 he was called to the dental unit and explained his needs. Inmate states he was seen again on 8-6-06 and asked for a cleaning and was informed that WICC does not have a dental hygienist. Inmate states he was seen again on 10-3-06 and Dr. Scholz informed him there is nothing that can be done at WICC and suggested inmate request a transfer to get appropriate medical attention. Inmate states he needs to be seen by an outside specialist since WICC can not give the necessary medical treatment. Inmate requests to have immediate medical/dental care provided (outside medical/dental treatment), transferred to a facility that is equipped to provide medical/dental treatment.

Dr. Scholz's response dated 12-19-06 reviewed. He states that IDOC uses the American Public Health Association categorization of Dental Patients (Administrative Directive 04.03.102). Category I being emergency and most severe and category VI being no symptoms or dental treatment needed. In my examination of Mr. Stevenson he appears to fall between category II and category III. Mr. Stevenson problems are not emergent. He has a chronic gingivitis which is generalized, usually a relatively painless gum chronic infection of long standing with some bleeding. Headaches are not addressed by the dental unit but by the physician.

According to OTS, inmate is eligible to request a transfer through his counselor as he has been at WICC for 6 months.

Recommendation: Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be denied.

_____          _Tara Goins_
Tara Goins
Print Grievance Officer's Name          Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

Date Received: 12-28-06    ☑ I concur.    ☐ I do not concur.    ☐ Remand

Comments:

_____          _12-28-06_
Chief Administrative Officer's Signature          Date

### Offender's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Stevenson, Michael L._     _N-93569_     _1-4-07_
Offender's Signature          ID#          Date

cc: HCU

**Rod R. Blagojevich**
Governor

# Illinois
### Department of
# Corrections

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

April 2, 2007

Michael Stevenson
Register No. N93569
Western Illinois Correctional Center

Dear Mr. Stevenson:

This is in response to your grievance received on January 11, 2007, regarding medical treatment (alleges his is not receiving adequate dental care), which was alleged to have occurred at Western Illinois Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report, 06-0898, and subsequent recommendation dated December 28, 2006 and approval by the Chief Administrative Officer on December 28, 2006 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration.  It is, therefore, recommended the grievance be denied.

FOR THE BOARD:  _Melody Ford_

Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED:  _Roger R. Walker_

Roger E. Walker Jr.
Director

cc:   Warden Roger Zimmerman, Western Illinois Correctional Center
      Michael Stevenson, Register No. N93569
      Chron. File

ILLINOIS DEPARTMENT OF CORRECTIONS

### Administrative Review Board
### Return of Grievance or Correspondence

Offender: *Stevenson    Michael*        N93569
          Last Name     First Name    MI    IDR

Facility: *WIL*

☑ Grievance (Local Grievance # (if applicable): _____)    or  ☑ Correspondence
Received: *12/15/06*    Regarding: *medical*
          Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**
- ☑ Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5657), including the Grievance Officer's and Chief Administrative Officer's response, to appeal.
- ☑ Provide a copy of the Committed Person's Grievance, DOC 0046 (formerly DC 5657) including the counselor's response if applicable).
- ☐ Provide date(s) of disciplinary report(s) and facility where incident(s) occurred.
- ☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
  Office of Inmate Issues
  1301 Concordia Court
  Springfield, IL  62794-9277

**Misdirected:**
- ☐ Contact your correctional counselor regarding this issue.
- ☐ Request restoration of Good Conduct Credits (GCC) to Adjustment Committee. If request is denied, utilize the inmate grievance process outlined in Department Rule 504 for further consideration.
- ☐ Contact the Record Office with your request or to provide additional information.
- ☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
- ☐ Address concerns to: Illinois Prisoner Review Board
  319 E. Madison St., Suite A
  Springfield, IL  62705

**No further redress:**
- ☐ Award of Meritorious Good Time (MGT) and Statutory Meritorious Good Time (SMGT) are administrative decisions; therefore, this issue will not be addressed further.
- ☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
- ☐ This office previously addressed this issue on ___/___/___
- ☐ No justification provided for additional consideration.

Other (specify): *Older grievances are past timeframe.*

Completed by: *Melody J. Ford*    *Melody J Ford 1/19/07*
              Print Name          Signature          Date

Distribution: Offender; Inmate Issues          DOC 0070 (10/2001)
                                               (Replaces DC 710-1374)

E-FILED
Monday, 17 March, 2008  04:56:43 PM
Clerk, U.S. District Court, ILCD

| STATE OF ILLINOIS | ) | *Stevenson vs. Scholz, et.al.* |
|---|---|---|
|  | ) ss. | USDC-CD-IL Case No. 07-3108 |
| COUNTY OF BROWN | ) |  |

## AFFIDAVIT

I, Roger Zimmerman, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.     I was Warden of Western Illinois Correctional Center from February 1, 2006 until May 16, 2007.

2.     As Warden of Western Illinois Correctional Center, I was responsible for the overall administration of the operations of the institution, including the security of the facility and the delivery of programs and services to the offenders confined at Western Illinois Correctional Center.  Western is a Secure-Medium security facility, housing approximately 1,921 adult offenders convicted of felonies.

3.     I was aware of Offender Michael Stevenson's (#N-93569) complaints regarding his dental care through grievances Offender Stevenson filed with the institution.  When reviewing grievances regarding inmate medical care and treatment, I must rely on the opinions of the medical professionals providing treatment.

4.     Aside from responding to Offender Stevenson's (#N-93569) grievances, I did not have personal involvement with the facts and occurrences alleged in the complaint.

5.     Plaintiff's grievance dated September 13, 2006, was reviewed by Counselor Steven VanStrien on October 5, 2006.  (Attached as "Group Exhibit 1").   On October 17, 2006 the grievance counselor, Tara Goins, determined that based on a review of information, her recommendation was that the grievance be denied because the dentist had stated that there was no need for an outside consult.  (Group Exhibit 1).  I concurred with the recommendation on October 18, 2006.

1



EXHIBIT
B

6.      Offender Stevenson also filed a grievance dated October 6, 2006 as an emergency grievance. (Group Exhibit 1). Based on the information in Offender Stevenson's grievance I determined on October 10, 2006 that Offender Stevenson's grievance did not substantiate an emergency.

7.      Plaintiff filed a third grievance dated December 12, 2006 as an emergency grievance. (Group Exhibit 1). Based on the information in Offender Stevenson's grievance, I expedited his grievance on December 13, 2006 as an emergency grievance.

8.      Grievance Officer Tara Goins responded to Offender Stevenson's grievance on December 28, 2006 after reviewing the grievance and a response submitted by Dr. Scholz that stated Offender Stevenson's dental problems were not emergent. Therefore, I concurred with Ms. Goins' recommendation and denied Mr. Stevenson's grievance. If Mr. Stevenson was unhappy with my decision, he had the ability to appeal my decision to the Administrative Review Board for additional review.

9.      If medical personnel had determined that Offender Stevenson needed medical treatment they would have provided it to him.

10.     I relied upon licensed medical professionals to provide appropriate health care treatment to the inmates in my institution.

11.     I was not present during any of the treatment provided to Offender Stevenson. I had no personal involvement in the diagnosis, treatment or medical care Offender Stevenson's (#N-93569), received at Western Illinois Correctional Center, nor was I licensed to provide medical care or treatment.

12.     I did not meet with Offender Stevenson to discuss the issues set forth in his grievance or his complaint.

2

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

_Roger Zimmerman_

SUBSCRIBED and SWORN to

before me this _14th_ day of March, 2008.

_Amy J. Hendricker_
Notary Public

```
"OFFICIAL SEAL"
AMY J. HENDRICKER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JAN. 12. 2010
```

3

Date: 9-13-06    Offender: Peterson, Michael L    ID#: N-93569
(Please Print)

| Present Facility: | W.I.C.C. | Facility where grievance issue occurred: | W.I.C.C. |
|---|---|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report: ___/___/___  Date of Report
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

Facility where issued _____

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** I've been to the dentist twice about the problems with my Gums. They are bleeding and swollen but the dentist says that it's nothing that he can do here and that they dont clean teeth Whut ever the Problem is I feel as though I'm being denied medical treatment my gums bleed every day and the Pain is Some times unbearable Can You Please give me Some kind of treatment?

**Relief Requested:** That I recieve Some kind of treatment

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____    _____    _____
Offender's Signature    ID#    Date

(Continue on reverse side if necessary)

| **Counselor's Response (if applicable)** |
|---|

Date Received: 9, 20, 06    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: D. Fuino states that I'm was seen on 10-3-06. Cleanings (Basic) are not performed at WICC due to no dental Hygienist. Dentist states no need for outside Consult.

VAN STRIEN _____    Van Str _____    10, 5, 06
Print Counselor's Name    Counselor's Signature    Date of Response

| **EMERGENCY REVIEW** |
|---|

Date Received: ___/___/___    Is this determined to be of an emergency nature?    [ ] Yes; expedite emergency grievance
[ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

RECEIVED
OCT 15 2006
WESTERN ILLINOIS C.C.
GRIEVANCE OFFICER

_____    _____
Chief Administrative Officer's Signature    Date

RECEIVED
JAN 11 2007
OFFICE OF
INMATE ISSUES

ILLINOIS DEPARTMENT OF CORRECTIONS

Distribution: Master File; Offender    Page 1    DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

GROUP EXHIBIT 1

# RESPONSE TO OFFENDER'S GRIEVANCE

## Grievance Officer's Report

Date Received: October 15, 2006 _____    Date of Review: October 17, 2006 _____    Grievance # (optional): 06-0728 _____

Offender: Michael Stevenson _____    ID#: N93569 _____

**Nature of Grievance:** Inmate is grieving medical-dental.

**Facts Reviewed:** Inmate's grievance reviewed. Inmate states that he has been to the dentist twice about the problems with his gums. He states they are bleeding and swollen and the dentist states there is nothing that can be done about it here and that they do not clean teeth here. Inmate requests some type of treatment.

Counselor's response dated 10-5-06 by CCII VanStrien states that D. Fuqua, HCUA, states that inmate was seen on 10-3-06. Cleanings (basic) are not performed at WICC due to no dental hygienist. Dentist states no need for outside consult.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be denied.

Tara Goins
_____
Print Grievance Officer's Name

_____
Grievance Officer's Signature

**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

## Chief Administrative Officer's Response

Date Received: _10-18-06_    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments:

RECEIVED
JAN 1 1 2007
OFFICE OF
INMATE ISSUES

_____
Chief Administrative Officer's Signature

_10-18-06_
Date

## Offender's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Michael L. Stevenson_    _N-93569_    _Oct. 29/06_
Offender's Signature    ID#    Date

**Illinois**
**Department of**
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

February 27, 2007

Michael Stevenson
Register No. N93569
Western Illinois Correctional Center

Dear Mr. Stevenson:

This is in response to your grievance received on November 6, 2006, regarding medical treatment (teeth cleaning not ordered, due to no hygienist on staff), which was alleged to have occurred at Western Illinois Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report, 06-720, and subsequent recommendation dated October 17, 2006 and approval by the Chief Administrative Officer on October 18, 2006 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:  Warden Roger Zimmerman, Western Illinois Correctional Center
     Michael Stevenson, Register No. N93569
     Chron. File

# COMMITTED PERSON'S GRIEVANCE

| Date: 10-6-06 | Committed Person: (Please Print) STEVENSON | ID#: N-93569 |
|---|---|---|

| Present Facility: W.I.C.C. | Facility where grievance issue occurred: W.I.C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☑ Medical Treatment
- ☐ Disability
- ☐ Other (specify): _____

☐ Disciplinary Report: ___/___/___
Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On Several occasions I made complaints to the Dentist Informing Him that gums bleed regularly and that my gums and teeth are in Pain. I also let him know that as a result of my Problems, it's becoming deFficult For me to Process my Food. THE Problem Has worsen and Has yet to be address by the Dentist. He claims that I need to see a Hygenist (wHich wa Dont Have) but states that my Problem dont need outside counsel. 720 ILCS 5/3-7-2 (d) States

**Relief Requested:** THAT I Recieve $10,000 A DAY entile I am Seen by a Hygenist as recomended by O.Fuguo (WICC Dentist) starting from Counselor Response Date (10-5-06)

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Michael L. Stevenson      N-93569    10,6,06
Committed Person's Signature      ID#      Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___
☐ Send directly to Grievance Officer
☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name      Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

Date Received: 10,10,06

Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☑ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature      10,10,06 Date

RECEIVED JAN 11 2007 OFFICE OF INMATE ISSUES

Distribution: Master File; Committed Person      DOC 0046 (Eff.10/2001) (Replaces DC 3637)

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued)

That All institutions and facilities of the Dept. Shall Provide every committed Person with medical and dental Care. BASed on the Dentist recomendations my dental needs are being restricted. As Far as I know a Dental Hygenist cleans teeth. My Problem is with bleeding and Painful gums and teeth. The Bottom line is that the Dentist recanize that I ~~cantas~~ ~~be resolved at wicc and most~~ Have a issue that Cant be resolved at WICC but also says that there is no need for outside Counsel. The Dentist has also told all that there are more serious Problems here at WICC. However the Statue says that all committed Persons shall be Provided with medical and Dental Care, not Just the more serious. Again Just to make clear, my gums are Swollen, bleeding and in Pain.

RECEIVED

JAN 17 2007

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 12-12-06 | Offender: (Please Print) Stevenson, Michael | IDS: N-93569 |

| Present Facility: Western Illinois | Facility where grievance issue occurred: Western Illinois |

**NATURE OF GRIEVANCE:**

(Poisoned Blood)    Grossly Inadequate

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] HIPAA
- [ ] Disability
- [x] Other (specify): *Medical Treatment* Incomplete
- [ ] Disciplinary Report: _____ Date of Report _____ Facility where issued

Distorted Misinformed
Responses/Reports
DR415 Violations

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** Upon entering Western Correctional Center Grievant immediately submitted numerous request to the Health Care Unit for "Emergency" (dental care). Finally, on 7-5-06 he was called to the dental unit, where he explained and showed his chronic need for immediate medical treatment as his gums were bleeding profusely with extreme pain and discomfort in gum, jaw and head pains. The treatment he received were grossly inadequate and hurried in "Cursory behavior." On 8-6-06 Grievant

**Relief Requested:** Immediate medical/Dental Care provide (Outside medical/Dental Treatment) Transferred to a facility that is medically/Dentally equipped to provide Grievant's serious medical/Dental Treatment.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or imparable harm to self.

Michael L. Stevenson    N-93564    12.12.06
Offender's Signature         IDS         Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: / / | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

| Date Received: 12.13.06 | Is this determination ... expedite emergency grievance [ ] an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

_(signature)_    12.13.06
Chief Administrative Officer's Signature         Date

RECEIVED    DEC 13 2006

Distribution: Master File; Offender    Page 1    Printed on Recycled Paper    DOC 0046 (Rev. 3/2005)

RECEIVED
JAN 11 2007
OFFICE OF
INMATE ISSUES

were called back to the dental unit after more complaints
and request submitted, where he once again explained and
showed his condition had worsened. He asked at this time
if the dentist could or would at least cleanse his teeth
(a measure used to prevent further injuries) since no other
medical treatments or dental treatments were getting per-
formed. Dr. Schutte denied the request, stating "There is no
one employed as a Hygienist here at Western and I don't
do cleanings." Grievant asked the Doctor/Dentist "How can you
examine my mouth and find so clearly, can be seen that I
am in dire need of immediate medical/Dental treatments
yet because Western Correctional Center does not have the
mandatory equiptments, nor medical Hygienist I am ignored
and not even recommended to an Outside care provider. He
responded with shrugged shoulders— stating "that's the way
Western does things." He were asked to leave and if he ex-
perience more pains and problems put in a request. Once
again, grievant submitted a request slip as suggested.
The Chronic pains, head aches and ability of not being able
to eat were unbearable. Finally on 10-3-06 Dr. Schutte
called grievant to the dental unit, where he examined his
gums and teeth "in forming him" there is nothing we are
equipted to perform with your serious condition. Unfortun-
ately; however, I suggest you put in for a facility
Transfer to get the treatments you so desperately need."
Grievant asked "why won't Western just take me to an Out-
side hospital or dental center; Dr. Schutte stated, "I dont
that our budget will allow this"; grievant stated, "Oh so
the whole ordeal is not so much of equiptment or Hygienist
or you can't perform my treatments, it's a budget con-
cern. How can you all look deliberately my Bleeding
gums, notice the severe agonizing pains, Head aches and
mouth discomforts I'm experiencing over this long
period of time and only be concern with how much
money to spend." Dr. Schutte asked me to leave, stating
again "Submit for a Transfer to get Better Dental Treatments."
Grievant continued to seek remedy for his serious medical
dental condition; however, denied any more responses.
Therefore, he were forced to make a formal complaint
through enoc 504 grievance procedures; on 9-13-06
grievant submitted his complaint to Clinical Services
against the posture of medical treatment. He explained that

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

Part #2 of 3

| Date: 12-12-06 | Offender: (Please Print) Stevenson, Michael | IDS: N-93569 |
|---|---|---|
| Present Facility: Western Illinois | Facility where grievance issue occurred: Western Illinois | |

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☐ Staff Conduct ☐ Dietary ☐ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify) _____

☐ Disciplinary Report: _____ _____
Date of Report    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** he had been examined (twice) by Dr. Schultz, who noted the serious bleeding and gum problems he were suffering. Grievant explained in his complaint/grievance of 9-13-06 also, how Dr. Schultz denied any medical-dental treatment, and preventive measures; such as cleaning his teeth/gums that would prevent further inquires (degenerative gums and tooth decay — pain full, swollen gums, inflamed gums — teeth loosening with substantive bleeding, and uncontrollable headaches). On 10-5-06 a response

**Relief Requested:** SEE Front Page #1 OF 3

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ _____ _____
Offender's Signature    IDS    Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ___/___/___ ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____ _____ _____
Print Counselor's Name    Counselor's Signature    Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___ Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ **RECEIVED** _____
Chief Administrative Officer's Signature    Date

**ILLINOIS DEPARTMENT OF CORRECTIONS**
JAN 11 2007
**OFFICE OF INMATE ISSUES**

Distribution: Master File; Offender    Page 1    DOC 0046 (Rev. 3/2005)

were made per: Counselor Van Stien who reported that Health Care Administrator Deborah Jugua stated "I'm was seen on 10-3-06, Cleanings (bave) are not performed at WICC due to no dental hygienist. Dentist states no need for outside consult." (End of this response/report)

On 10-15-06 / 10-18-06 grievance officer Tara Goins made a response/report identical to the response/report of Clinical Service Counselor Van Stien (see 6/0 report), making a Recommendation grievantor grievance be denied. Warden Roger Zimmerman concurred 10-18-06.

These acts are deliberately committed in a sufficiently culpable state of mind. Each denial and distorted, incomplete response/report constitutes a violation(s) of grievant's guaranteed constitutional rights as an inmate in the Illinois Department of Corrections. These deliberate acts blatantly violate the established laws of IDOC medical DR 415. Each Administration in their proper protocol were, have and continue to be made aware of the serious medical/dental need. They have, and continue to be made aware of the failures to provide Emergency medical-dental treatments (including the urgent necessity to have an outside medical/Dental provider treat grievants serious condition). Each Administrator has have and continues to be made aware how these denials have and continues to cause unwanton inflictions of pains - bleedings - headaches and degenerative gums; however each one; (Warden Zimmerman = Health Care Administrator Deborah Jugua = Dr. Schutts the Dentist) have made their own rules against those established government and state law, for inmates of IDOC, grievant included, to deny him treatment for serious medical/dental conditions needing immediate attention.

In addition, how could Health Care Administrator make any type of statement as reported, as she only chose to report to the Counselor Van Stien 10-5-06 (the third visit grievant were examined by Dr. Schutts). Why did she not provide a complete report as the procedure of IDOC medical/Dental DR 415 request mandatory. In addition the medical Records at grievants file are totally incomplete, as to accurate reportings of all dental visits he were examined by Dr. Schutts, from the first visit of 7-5-06

# ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

Date: 12-12-06  Offender: (Please Print) StevenSon, michael  IDOC# N-93529

Present Facility: WeStern Illinois  Facility where grievance issue occurred: WeStern Illinois

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ Disability
☐ Staff Conduct  ☐ Dietary  ☐ Medical Treatment  ☐ HIPAA
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator  ☐ Other (specify)

☐ Disciplinary Report: _____  Date of Report  Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: 8-6-06 the second; prior to 10-3-06 the only visit/examination Deborah Shugna reported to the counselor for response to grievants grievance. These at best are continued acts of Dexterity. Grievant's serious medical condition warrants an immediate outside care providers treatment for his gums are inflamed (with excruciating pains), discomforts and headaches. It must be noted in the grievance officers and counselors responses then each reported what Deborah Shugna said, not the

Relief Requested: SEE Front Page #1 of 3

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature  IDOC#  Date
(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: ___/___/___  ☐ Send directly to Grievance Officer  ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name  Counselor's Signature  Date of Response

---

### EMERGENCY REVIEW

Date Received: ___/___/___  Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature  Date

**RECEIVED**
JAN 11 2007
OFFICE OF
INMATE ISSUES

ILLINOIS DEPARTMENT OF CORRECTIONS  Page 1  DOC 0046 (Rev. 3/2005)
Printed on Recycled Paper

Doctor/Dentist; stating "Dentist states No need for outside Consult" Which's the Written report of Dr. Schltz who actually examined grievant, not Deborah Bugin. It appear the Dentist has No authority in decision; however if you'd examine the report he wrote 10-3-06, he recorded he suggested I get a transfer to a facility best equipted to accommodate my medical/dental condition.

Once a person official(s) is aware of a "Serious Medical/Dental Need or Condition") and is diagnosed of the same, not denials and delays are commonly intentionally (regardless of a budget intheri) these acts are Constitutional violations of both State and Federal Laws. This is deliberate indefference and must be corrected and treated medically Immediatly without bias or retaliation.

Therefore, grievant request all the above be immediatly remedied and medically treated, including a facility transfer for the purpose of Medical Equipment and Provisions as Dr. Schultz has suggested to prevent further degeneration of gums, teeth decay, headaches, swollen and inflamed gums which cannot be treated at Western Corr. Ctr. due to budget, lack of equipment and dental assistant.

Medical (DR 415) Dental = Determine the issue:
    (1.) (grievant has not received (Dental call).
    (2.) (Contact HCU Admin. - She was made incomplete report.
    (3.) (Grievant is in compliance with (IDOC procedures).
    Yet denied Serious Medical Treatment for Dental Needs.

In addition, let it be Noted, Each dentist report of 7-5-06/ 8-6-06/ 10-3-06 were incomplete to all the facts and discussions between Dr. Schultz and Grievant. Dr. Schultz misinformed the records as to (all) the facts and only reported a very small amount of evidence he personally examined on each of grievants dental visits that would appear No Need to Remedy or properly treats Why? yet made a recommendation For facility Transfer to get Adequate Dental Care. (See Attached Records

RESPONSE TO OFFENDER'S GRIEVANCE
## Grievance Officer's Report

Date Received: December 13, 2006_____ Date of Review: December 28, 2006_____ Grievance # (optional): 06-0898E____

Offender: Michael Stevenson_____ ID#: N93569_____

Nature of Grievance: _____ Inmate is grieving medical treatment-dental.

**Facts Reviewed:** Emergency Grievance. Inmate's grievance reviewed. Inmate states that he has been requesting to receive emergency dental care. Inmate states that on 7-5-06 he was called to the dental unit and explained his needs. Inmate states he was seen again on 8-6-06 and asked for a cleaning and was informed that WICC does not have a dental hygienist. Inmate states he was seen again on 10-3-06 and Dr. Scholz informed him there is nothing that can be done at WICC and suggested inmate request a transfer to get appropriate medical attention. Inmate states he needs to be seen by an outside specialist since WICC can not give the necessary medical treatment needed. Inmate requests to have immediate medical/dental care provided (outside medical/dental treatment), transferred to a facility that is equipped to provide medical/dental treatment.

Dr. Scholz's response dated 12-19-06 reviewed. He states that IDOC uses the American Public Health Association categorization of Dental Patients (Administrative Directive 04.03.102). Category I being emergency and most severe and category VI being no symptoms or dental treatment needed. In my examination of Mr. Stevenson he appears to fall between category II and category III. Mr. Stevenson problems are not emergent. He has a chronic gingivitis which is generalized, usually a relatively painless gum chronic infection of long standing with some bleeding. Headaches are not addressed by the dental unit but by the physician.

According to OTS, inmate is eligible to request a transfer through his counselor as he has been at WICC for 6 months.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be denied.

Tara Goins
_____
Print Grievance Officer's Name

_Tara Goins_
_____
Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

## Chief Administrative Officer's Response

Date Received: 12-28-06       ☑ I concur    ☐ I do not concur    ☐ Remand

Comments:

_____
Chief Administrative Officer's Signature

12-28-06
_____
Date

## Offender's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Stevenson, Michael L._         N-93569      1-4-07
_____          _____        _____
Offender's Signature              ID#          Date

MY COPY 4 OF 4

**Rod R. Blagojevich**
Governor

# Illinois
### Department of
# Corrections

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

April 2, 2007

Michael Stevenson
Register No. N93569
Western Illinois Correctional Center

Dear Mr. Stevenson:

This is in response to your grievance received on January 11, 2007, regarding medical treatment (alleges his is not receiving adequate dental care), which was alleged to have occurred at Western Illinois Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report, 06-0898, and subsequent recommendation dated December 28, 2006 and approval by the Chief Administrative Officer on December 28, 2006 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:   Warden Roger Zimmerman, Western Illinois Correctional Center
      Michael Stevenson, Register No. N93569
      Chron. File

STATE OF ILLINOIS )        *Stevenson vs. Scholz, et.al.*
)        USDC-CD-IL Case No. 07-3108
COUNTY OF   BROWN )

## AFFIDAVIT

I, Deborah K. Fuqua, having first been duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify, and if called to testify I would state as follows:

1.      I am employed as the Health Care Unit Administrator at Western Illinois Correctional Center.  I am also a Registered Nurse (R.N.) and Certified Correctional Health Professional (C.C.H.P.).

2.      In my role as Health Care Unit Administrator, I am responsible to manage the day-to-day operations of the health care services contracted through Wexford.  As the Administrator of the Health Care Unit, I do not provide or determine inmate dental treatment.  Additionally, I am not licensed to provide dental care and treatment.  I cannot overrule the medical decisions of the doctors or dentists in the Health Care Unit.

3.      When a Correctional Counselor contacts me about an inmate's complaints regarding his medical or dental care and treatment, I review the inmate's medical records.

4.      I do not recall speaking with Correctional Counselor Steven VanStrien regarding inmate Michael Stevenson's (#N93569) complaints regarding his dental care in September of 2006. However, I would have reviewed his dental records to see whether or not he was receiving dental care.  I would have then reported on my review of the dental records to the Correctional Counselor.  I would not have determined whether or not Mr. Stevenson's grievance be upheld or denied, and I do not have the authority to make that decision.

5.      I did not personally meet with Mr. Stevenson to discuss his concerns regarding his dental care.

6.      I have not had any direct involvement in any decisions concerning medical care for Mr. Stevenson, and I have neither directed nor approved the course of medical treatment for Mr. Stevenson.

1


EXHIBIT

G

I have read the foregoing and affirm that the facts contained herein and documents attached hereto are true and correct to the best of my knowledge and belief.

Deborah K. Fuqua

Subscribed and sworn to before me
this __14th__ day of March, 2006.

Notary Public

OFFICIAL SEAL
KATHLEEN A. EVELAND
Notary Public  State of Illinois
My Commission Expires Oct 29, 2011

2

STATE OF ILLINOIS          )
                           ) ss.          *Stevenson vs. Scholz, et.al.*
COUNTY OF BROWN            )              USDC-CD-IL Case No. 07-3108

### AFFIDAVIT

I, Tara Goins, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.      I am a Grievance Officer at Western Illinois Correctional Center. I have been employed by the Illinois Department of Corrections since January 23, 1995.

2.      Part of my job responsibilities include responding to inmate grievances. I can only recommend that a grievance be upheld or denied. However, the final determination on an inmate's grievance is made by the Warden.

3.      When responding to an inmate grievance regarding medical care and treatment, it is my practice to contact the Health Care Unit Administrator in order to address the inmate's issues.

4.      I was aware of Michael Stevenson's (#N-93569) complaints regarding his dental care and treatment at Western Illinois Correctional Center through grievances Mr. Stevenson filed with the institution dated September 13, 2006 and December 12, 2006.

5.      I reviewed Mr. Stevenson's grievance dated September 13, 2006 on October 17, 2006 and recommended that the grievance be denied. For my recommendation I considered the inmate's grievance wherein he stated he had been to the dentist twice about problems with his gums, and the Counselor's response dated October 5, 2006 which stated that the inmate had been seen on October 3, 2006 and that the dentist found that there was no need for outside consult. Based on this information, I recommended that the grievance be denied.

6.      I also reviewed Mr. Stevenson's grievance dated December 12, 2006 on December 28, 2006. The December 12, 2006 grievance was determined to be an emergency grievance by Warden Roger Zimmerman. The grievance stated that Mr. Stevenson was seen in the dental unit on July 5, 2006, August 6, 2006 and October 3, 2006 and that Mr. Stevenson was

1

EXHIBIT

D

3:07-cv-03108-HAB-CHE    # 37-3    Page 20 of 22

requesting to be transported to a dentist outside of the correctional facility or transfer to a facility that was equipped to provide medical and dental treatment.

7.    Additionally, Dr. Scholz responded to Mr. Stevenson's grievance on December 19, 2006 via a report and stated that Mr. Stevenson's problems were not emergent.

8.    At that time, I also looked at the Offender Tracking System ("OTS") to determine whether or not Mr. Stevenson was eligible for a transfer. OTS indicated that Mr. Stevenson had been at Western Illinois Correctional Center for six months and was eligible to request a transfer through his counselor.

9.    Based on a review of the information provided to me by the inmate and Dr. Scholz, I recommended that Mr. Stevenson's grievance be denied.

10.    When evaluating inmate medical grievances, I base my decisions upon the inmate's grievance and the responses from the medical professionals at Western Illinois Correctional Center. Because Mr. Stevenson was receiving medical care, there was nothing more I could have done for him.

11.    I had no personal involvement in the diagnosis, treatment of medical or dental care that Mr. Stevenson received at Western Illinois Correctional Center, nor am I licensed to provide medical or dental care and treatment or prescribe medication.

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

_Tara Goins_
Tara Goins

SUBSCRIBED and SWORN to
before me this _17th_ day of March, 2008.

_Kathleen A. Eveland_
Notary Public

> OFFICIAL SEAL
> KATHLEEN A. EVELAND
> Notary Public  State of Illinois
> My Commission Expires Oct 29, 2011

2

| STATE OF ILLINOIS | ) | *Stevenson vs. Scholz, et.al.* |
|---|---|---|
| | ) ss. | USDC-CD-IL Case No. 07-3108 |
| COUNTY OF BROWN | ) | |

## **AFFIDAVIT**

I, Steven VanStrien, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.     I am a Correctional Counselor II at Western Illinois Correctional Center. I have been employed by the Illinois Department of Corrections since January 23, 1989.

2.     Part of my job responsibilities include responding to inmate grievances. When responding to inmate grievance regarding medical care and treatment, it is my practice to contact the Health Care Unit Administrator in order to address the inmate's issues.

3.     I was aware of Michael Stevenson's (#N-93569) complaints regarding his dental care and treatment at Western Illinois Correctional Center through a grievance Mr. Stevenson filed with the institution dated September 13, 2006.

4.     I responded to Mr. Stevenson's grievance on October 5, 2006. In order to respond to the grievance, I consulted Deborah Fuqua, the Health Care Unit Administrator. I was informed that Mr. Stevenson was seen on October 3, 2006 and that basic cleanings were not performed at Western Illinois Correctional Center due to no dental hygienist. Additionally, the dentist stated that there was no need for outside consult.

5.     Mr. Stevenson's grievance was returned to him with my response. Because Mr. Stevenson was receiving medical care, there was nothing more I could have done for him.

6.     I had no personal involvement in the diagnosis, treatment of medical or dental care that Mr. Stevenson received at Western Illinois Correctional Center, nor am I licensed to provide medical or dental care and treatment or prescribe medication.

1

**EXHIBIT**

tabbies

*E*

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

_Steven VanStrien_

Steven VanStrien

SUBSCRIBED and SWORN to
before me this _14th_ day of March, 2008.

_Kathleen A. Eveland_

Notary Public

OFFICIAL SEAL
KATHLEEN A. EVELAND
Notary Public   State of Illinois
My Commission Expires Oct 29, 2011

2

E-FILED
Monday, 17 March, 2008 04:57:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MICHAEL STEVENSON, Inmate    )
#N93569,                     )
                             )
                Plaintiff,   )
                             )
            -vs-             )    No. 07-3108
                             )
DR. SCHOLZ, et al.,          )
                             )
                Defendant.   )


**THE DEPOSITION OF MICHAEL STEVENSON, #N93569,**

taken before Amy S. Powers, Illinois CSR

084-003053, RPR 038540, a Notary Public, on

Tuesday, the **29th** day of **January 2008**, commencing

at the hour of 10:00 a.m., at Illinois River

Correctional Center, Route 9 West, in the City of

Canton, County of Fulton, and State of Illinois.


**CIRCUIT WIDE REPORTING**
**Suite 316 Hill Arcade Building**
**Galesburg, Illinois 61401**
**(309) 343-3376 * 1-800-342-DEPO**

EXHIBIT
F

**PRESENT:**

MICHAEL STEVENSON, #N93569
Illinois River Correctional Center
Route 9 West
Canton, Illinois 61520
   appearing Pro Se;

THERESA POWELL, ESQ.,
Heyl, Royster, Voelker & Allen
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705-1687
   on behalf of Dr. Scholz;

ELLEN C. BRUCE, ESQ.,
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
   on behalf of Melody Ford, Deborah
   Fuqua, Tara Goins, Steven Vanstrien,
   Roger E. Walker, Jr., and Roger
   Zimmerman.

## I N D E X

| WITNESS | PAGE |
|---|---|
| MICHAEL STEVENSON, #N93569, | |
| Examination by Ms. Bruce | 3 - 24 |
| Examination by Ms. Powell | 25 - 48 |
| Further Examination by Ms. Bruce | 48 - 51 |
| Certificate of Reporter | 53 - 54 |
| Signature Page | 55 |

EXHIBITS
  No Exhibits

```
 1    (Witness sworn.)

 2              MICHAEL STEVENSON, #N93569,

 3    having been first duly sworn, was examined and

 4    testified on his oath as follows:

 5

 6    DIRECT EXAMINATION BY MS. POWELL:

 7    Q.   Would you state your name, please.

 8    A.   Michael Stevenson.

 9    Q.   And you are currently incarcerated at the

10         Illinois River Correctional Center?

11    A.   Yes, ma'am.

12    Q.   How long have you been here at Illinois

13         River?

14    A.   About three weeks.

15    Q.   Okay.  Before that were you at the Western

16         Illinois Correctional Center?

17    A.   Yes.

18    Q.   And when were you first incarcerated at

19         Western?

20    A.   May '05 or June '05.

21    Q.   And before that were you at another

22         correctional facility, or is that the first

23         place?

24    A.   Cook County Jail.
```

```
 1    Q.   Okay.  And how long were you at the Cook
 2         County Jail?
 3    A.   Eleven months.
 4    Q.   Okay.  And before that where did you live?
 5    A.   In Chicago.
 6    Q.   Okay.  And are you on any medications that
 7         would affect your ability to understand my
 8         questions or to answer them?
 9    A.   No.
10    Q.   And do you have a dentist in Chicago that
11         you regularly saw?
12    A.   No.
13    Q.   When's the last time you had seen a dentist
14         before you were incarcerated?
15    A.   Before incarceration?  Would that also be
16         Cook County Jail or before that?
17    Q.   Before that.
18    A.   When was the last time I seen a dentist?
19         It's been awhile.
20    Q.   You can't remember?
21    A.   No.
22    Q.   Okay.  And do you remember the name of the
23         dentist -- well, did you see a dentist while
24         you were in the Cook County Jail?
```

1    A.    Yes.

2    Q.    Do you remember the name of that dentist?

3    A.    No, I do not.

4    Q.    All right.  I'm here to ask you questions

5          today about your claim against Dr. Scholz,

6          the dentist at Western Illinois Correctional

7          Center.  And what are you saying that

8          Dr. Scholz did wrong?

9    A.    He didn't provide me medical care.

10   Q.    Okay.  What medical care are you saying he

11         didn't provide you?

12   A.    Whatever treats gingivitis and the pain that

13         I was having associated with gingivitis.

14   Q.    When was the first time that you were

15         diagnosed with gingivitis?

16   A.    7-05-06.

17   Q.    And was that the first time that you saw

18         Dr. Scholz?

19   A.    Yes.

20   Q.    And before 7-05-06 had you seen any other

21         dentists at Western Illinois Correctional

22         Center?

23   A.    No.

24   Q.    And maybe -- had you been at Western for a

```
 1        year before you saw any dentist, or was it
 2        just a few months?
 3   A.   It was a few months.
 4   Q.   Okay.  Because earlier you told me you went
 5        to Western in May of '05.
 6   A.   Oh, I'm sorry, yes, it was '06 then, I'm
 7        sorry.
 8   Q.   That's okay.  And then did you put in for --
 9        see, your Motion for Summary Judgment says
10        you put in an emergency request to be seen
11        by a dentist; is that correct?
12   A.   Yes.
13   Q.   And then you were seen by Dr. Scholz on July
14        the 5th of '06, right?
15   A.   Correct.
16   Q.   Is it your understanding that he's the one
17        that actually diagnosed the gingivitis?
18   A.   Yes.
19   Q.   And do you understand how -- or what
20        gingivitis is?
21   A.   Yes.
22   Q.   What is your understanding of what
23        gingivitis is?
24   A.   Gingivitis is a periodontal gum disease.
```

1  Q.   Do you know the difference between
2       gingivitis and periodontal disease?
3  A.   No, I'm not a doctor.
4  Q.   Okay.
5  A.   But I just understand that it's a
6       periodontal gum disease.
7  Q.   Well, what's your understanding of what
8       periodontal means?
9  A.   I haven't the slightest idea.  I guess it
10      pertains to the mouth, teeth, gums.
11  Q.  And do you have an understanding as to how
12      long you had gingivitis?
13  A.  No.
14  Q.  And can you tell me what your dental hygiene
15      has been for the last five years before you
16      became incarcerated?
17  A.  Brush my teeth about once a day.
18  Q.  Have you ever had any fillings in your teeth
19      before you came to prison?
20  A.  One.
21  Q.  And when was that?
22  A.  I'm not sure, but somewhere in the mid '90s.
23  Q.  Okay.
24  A.  Maybe '97, '98, maybe at the end.

```
 1    Q.    Okay.  Had you ever had your teeth

 2          professionally cleaned by a dentist?

 3    A.    Yes.

 4    Q.    When was that?

 5    A.    Probably around 2000 and 2005.

 6    Q.    Was that two separate occasions?

 7    A.    Yes.

 8    Q.    So in 2000 you had your teeth cleaned and in

 9          2005 you had your teeth cleaned?

10    A.    Yes.

11    Q.    Did you have problems with your teeth on

12          those occasions?

13    A.    No.

14    Q.    Do you remember the dentist who cleaned your

15          teeth?

16    A.    No.

17    Q.    And that was in Chicago?

18    A.    The one in 2000 was actually down here at

19          Illinois River.  And 2005 was in Cook County

20          Jail.

21    Q.    Have you ever had your teeth cleaned when

22          you were not in the prison or in a jail?

23    A.    No.

24    Q.    Would any dentist have x-rays of your teeth
```

1       outside of the prison system?

2    A.    Yes.

3    Q.    Who was that?

4    A.    Dr. Cross.

5    Q.    And who is that?  Is he a dentist somewhere?

6    A.    Yes.  His office used to be on 75th Street,

7          somewhere around 2200 East 75th Street.

8          Around 75th and Clyde.

9    Q.    And when would you have seen him?

10   A.    All through my childhood.  All the way up to

11         about 14.

12   Q.    And how old are you now?

13   A.    I'm 37.

14   Q.    Okay.  So you're saying that Dr. Scholz

15         diagnosed you with gingivitis in July of

16         2006, right?

17   A.    Yes.

18   Q.    And you saw Dr. Scholz on a couple other

19         occasions?

20   A.    Yes.

21   Q.    In 2006, right?

22   A.    Yes.

23   Q.    And you're claiming that you wanted

24         treatment, some sort of treatment for your

1             gingivitis, right?

2     A.     Yes.  I didn't know at that time exactly

3            what the treatment were -- was, but I

4            assumed that he would give me some type of

5            medication.

6     Q.     For what?

7     A.     For the bleeding, the swolled (sic) gums.  I

8            didn't know that it was something that he

9            would have to go do.  I thought it was some

10           type of pill, some time of medication or

11           something that I would gargle with.  At that

12           time that's what I believed.

13    Q.     Okay.

14    A.     But then I found out that in my stage of

15           gingivitis that he should have root planed

16           or scaled to alleviate the problem.

17    Q.     And at the time that you saw Dr. Scholz,

18           what did he tell you?

19    A.     He told me that it was more severe problems

20           at Western Illinois than to deal with my --

21           my gingivitis.  He said there was people

22           with teeth that needed to be pulled.

23    Q.     And you don't know what those problems were?

24    A.     Other people's problems?

1    Q.    Right.

2    A.    No, he just said it was more severe problems

3          than mine.

4    Q.    Okay.  And then what happened, anything?

5          Did you see Dr. Scholz again?

6    A.    I think I seen him a total of three or four

7          times before he decided to do anything.

8    Q.    Okay.  And it's my understanding from

9          looking at your records that you have

10         actually had your teeth scaled, right?

11   A.    Yes.

12   Q.    Okay.

13   A.    By Dr. Scholz.

14   Q.    So what injuries are you saying you

15         sustained as a result of anything Dr. Scholz

16         did or didn't do?

17   A.    Well, as far as I know, some of the things

18         remains to be -- remains to be seen.  But at

19         that time, you know, my gums were swolled

20         (sic), I couldn't eat.  I was just dealing

21         with a lot of pain, you know.  I couldn't

22         eat, I was -- the temperatures and heating

23         and things like that that went to my mouth,

24         all the things bothered me.

1   Q.   Okay.  You understand that your gums were

2        swollen because of the gingivitis, right?

3   A.   Yes.

4   Q.   And were you flossing your teeth?

5   A.   Yes.

6   Q.   When did you start flossing your teeth?

7   A.   When Dr. Scholz told me on 7-05-06.

8   Q.   And before 7-05-06 had you ever started

9        flossing your teeth?

10  A.   Well, I was flossing, but not on a regular

11       basis.

12  Q.   And are you flossing on a regular basis now?

13  A.   Yes.

14  Q.   And did Dr. Scholz explain to you that

15       gingivitis is caused by a build-up of plaque

16       on your teeth?

17  A.   Yes.

18  Q.   And poor dental hygiene?

19  A.   Yes.

20  Q.   So your gums were swollen, your gums were

21       bleeding, what else?

22  A.   They bled, my teeth began to loosen.

23  Q.   Did you lose any teeth?

24  A.   No.

```
 1    Q.    Did you lose any weight?

 2    A.    Yes.

 3    Q.    How much?

 4    A.    I could tell you though.  I think it was

 5          somewhere about 20-something pounds.  I

 6          think about 20-something pounds.

 7    Q.    Were you on a diet during that time?

 8    A.    No.  It was just like I couldn't eat a lot

 9          of things.  The fish, chicken, bread,

10          cookies, chips, the noodles that you sold in

11          commissary was too spicy.  I couldn't eat

12          any of that stuff.  I tried to eat plain

13          noodles, any mushy vegetable.  I couldn't

14          eat corn.  A lot of the things affected me

15          and I just -- the pain was just -- was just

16          too great for me to deal with, so there's a

17          lot of things I couldn't eat.

18    Q.    So did you not go to the chow?

19    A.    Yeah, I went all the time.

20    Q.    All right.

21    A.    And ate what I could.

22    Q.    So you ate, but you just didn't eat as much?

23    A.    Yeah.  It was too painful.

24    Q.    And how long did that last?
```

1    A.    About a year.

2    Q.    Do you have any current problems?

3    A.    No.  Not that -- not associated with my

4          teeth.

5    Q.    Okay.  And other than what you've described,

6          did you have any other problems that you

7          associated with your teeth?

8    A.    At that time?

9    Q.    Right.

10   A.    No.  If it was, it was mask whatever pains I

11         was having.  Like I say, I'm not a dentist.

12         I just reported my symptoms to Dr. Scholz

13         and it just progressed.  It got worse and

14         worse.  I do have some type of problems now,

15         but I don't know if it's associated with the

16         gingivitis or not.  I'm waiting to see the

17         dentist down here.

18   Q.    And now that you're at Illinois River, you

19         don't see Dr. Scholz anymore, correct?

20   A.    No.

21   Q.    That's correct?

22   A.    Yes, that's correct.

23   Q.    And do you remember when the last time was

24         that you saw Dr. Scholz?

```
1    A.    No.  It had to -- it was sometime after

2          8-07.

3    Q.    Okay.  And how many times did Dr. Scholz do

4          the scaling?

5    A.    Once.

6    Q.    Okay.  And the root planing, that was all

7          done together, right?

8    A.    Yes.

9    Q.    And were they -- did you ever have your

10         teeth cleaned at the Cook County Jail?

11   A.    Yes.

12   Q.    How many times?

13   A.    Once.

14   Q.    And did they do anything else?

15   A.    No.

16   Q.    Did they take any x-rays of your teeth?

17   A.    No, not that I can remember.

18   Q.    And do you have copies of any of your dental

19         records from the Cook County Jail?

20   A.    No.

21   Q.    Did you have any conversations with your

22         dentist there about your teeth?

23   A.    At Cook County Jail?

24   Q.    Right.
```

```
1    A.    Regular conversation.

2    Q.    About your teeth with the dentist?

3    A.    She gave me oral health instructions after

4          she cleaned my teeth and told me to brush,

5          things like that, basic things.

6    Q.    Okay.  And in your Motion for Summary

7          Judgment, you indicate that you put in for

8          an emergency visit with the dentist when you

9          arrived at Western.  What was the problem

10         that you had when you got to Western?

11   A.    My teeth was beginning to -- my gums was

12         beginning to swell up and bleed.

13   Q.    And how long had that been going on?

14   A.    I don't know.

15   Q.    Well, was it --

16   A.    It seemed like it -- probably about a month.

17   Q.    And had you reported any of those problems

18         at the Cook County Jail?

19   A.    No, I didn't have that problem at Cook

20         County Jail.

21   Q.    So the problem -- the problems that you

22         described you developed while you were at

23         Western?

24   A.    No, I started recognizing them when I was in
```

1           NRC.

2    Q.    Is that Stateville?

3    A.    Yeah, intake.

4    Q.    Okay.  Well, when did you go to Stateville?

5    A.    I don't know.

6    Q.    Did you report any problems to the dentist

7          at Stateville?

8    A.    I think -- I don't know.  I'm not sure if I

9          did or not.  It's a brisk process.  You

10         know, each department try to get you in and

11         out as quick as possible.  They just do --

12         as far as I know, they just -- they just

13         do -- I don't know, some type of primary

14         screening just to -- just an intake process.

15   Q.    Okay.  So if you --

16   A.    They don't really care about problems I

17         don't think.

18   Q.    So you don't recall any conversations you

19         had with any problems regarding complaints

20         about your teeth?

21   A.    No.  I just remember them doing x-rays.

22         That's about all I can remember that the

23         dentist did down there.

24   Q.    Okay.  The dentist where?

1   A.   NRC.

2   Q.   Oh, they did take x-rays of your teeth?

3   A.   Yes.

4   Q.   Okay.

5   A.   Upon intake, that's what they do.

6   Q.   And did they say anything to you about any

7        problems they recognized with your teeth?

8   A.   No.  They just -- they just noticed -- noted

9        the teeth that I had missing.

10  Q.   Okay.  Have you had some teeth pulled?

11  A.   Yes.

12  Q.   And what was the problem?  Why did you have

13       to have your teeth pulled?

14  A.   One was cracking, one of the front -- I

15       don't know if they call them cisors (sic).

16  Q.   The incisors?

17  A.   Incisors.

18  Q.   Okay.

19  A.   One of them was cracked, so it was pulled.

20       My wisdom tooth, it was pulled because it

21       grew the wrong direction.

22  Q.   And that's the only teeth you've had taken

23       out?

24  A.   Yes.

```
 1    Q.   Okay.  And was that all done while you were
 2         incarcerated?
 3    A.   The canine -- I mean, the wisdom tooth.
 4    Q.   Okay.
 5    A.   It was done in, I don't know, '97, '98 down
 6         at Illinois River.
 7    Q.   Okay.  And the other tooth?
 8    A.   It was done maybe '84, '83, '85, somewhere
 9         up in there.
10    Q.   Were you in school?  Were you still living
11         with your mom then?
12    A.   Yeah.
13    Q.   Do you know who did that?
14    A.   I pulled it out.  I pulled out it.
15    Q.   Oh, you pulled it out yourself.  Okay.  And
16         do you know how it got cracked?
17    A.   Yeah, I fell on my face.
18    Q.   Have you ever had any other problems with
19         your teeth?
20    A.   No, except for the cavity, the one cavity
21         that I have.
22    Q.   Do you have it now?
23    A.   The cavity?
24    Q.   Yes.
```

1    A.    Yes, it's filled.

2    Q.    Who filled that?

3    A.    Dr. Downey, Illinois River.

4    Q.    Are your gums swollen at this present time?

5    A.    No.

6    Q.    Do you have the bleeding anymore?

7    A.    No.

8    Q.    And did you gain the weight back?

9    A.    No.

10   Q.    Did you want to?

11   A.    No.

12   Q.    You look better now, you feel better now

13         that you've lost some weight?

14   A.    Yeah.

15   Q.    That's a yes?

16   A.    Yes.

17   Q.    Okay.  Were you on an exercise program at

18         the time that you lost the weight?

19   A.    No.

20   Q.    Do you have any other -- do you have any

21         medical conditions like diabetes or anything

22         like that?

23   A.    No.  The only problem that I really could

24         see, you know, with my gums right now, that

1           they -- they recess past the enamel line,

2           and I'm still sensitive to cold and warm

3           foods.

4    Q.     Did you have a conversation with any dentist

5           about that?

6    A.     No, I'm waiting to see the dentist down here

7           now.

8    Q.     And are all your teeth sensitive, or just

9           the one where you had the filling?

10   A.     No, the one on this side (indicating).  Some

11          type of black is growing in there, so I

12          don't know what it is.  I'm waiting to see

13          this dentist.

14   Q.     Is it just one tooth that has the

15          sensitivity?

16   A.     Yeah, pre-molars.

17   Q.     Is that tooth by any other -- by any of the

18          teeth that you had worked on?

19   A.     I don't understand.

20   Q.     Is the tooth that's sensitive, is it near

21          any of the teeth that you had worked on in

22          the past?

23   A.     Dr. Scholz worked on all of them.

24   Q.     Okay.  Well, is this tooth by any -- by the

1      tooth that has the filling?

2  A.  No.  On the other side.

3  Q.  Did you see a doctor about your complaints

4      of a headache?

5  A.  Yes, I did.

6  Q.  And which doctor did you see?

7  A.  Dr. Brown, the medical director from Wexford

8      Medical, on-site medical director or

9      something like that.

10  Q.  Did he treat you for your headaches?

11  A.  I can't recall if he -- if he gave me any

12      aspirin.  It seems to me like I remember

13      getting some aspirin, or they told me to go

14      to commissary or something.  He told me --

15      he looked at my teeth and said he was going

16      to speak to Dr. Scholz.

17  Q.  Okay.  And did he say that your headaches

18      were related to your teeth?

19  A.  No, he didn't say that.

20  Q.  Did any doctor ever say that your headaches

21      were related to your teeth?

22  A.  No.

23  Q.  And did any physician or dentist ever

24      indicate to you that your gingivitis was an

```
 1          emergent condition?
 2    A.    Dr. Brown -- Dr. Brown might have, because
 3          he said he was going to, you know, after he
 4          looked at my teeth when Dr. Scholz wouldn't
 5          see me anymore, because he kept telling me
 6          it's nothing I can do, and he wouldn't
 7          answer my request slips anymore, so I went
 8          to see the regular doctor, Dr. Brown.  And
 9          when he seen my teeth and had it was
10          bleeding and swolled (sic) up, he said he
11          was going to talk to Dr. Scholz about it.
12          So I don't know if that was -- if he
13          considered that an emergency at that time or
14          what, but he said he was going to speak to
15          him.  Unfortunately, Dr. Scholz wasn't there
16          that day and he -- Dr. Brown called me back
17          concerning my teeth and just said that he
18          was going to talk to him.  So I don't know.
19    Q.    Okay.  Did Dr. Brown send you out to the
20          hospital on any of the dates that he saw you
21          and looked at your teeth?
22    A.    No.
23    Q.    Okay.  And the conversation that you had
24          with Dr. Brown, was that before you had the
```

```
 1        scaling done by Dr. Scholz?
 2   A.   Yes.
 3   Q.   Okay.  And how many times do you think you
 4        saw Dr. Brown for your problems?
 5   A.   Well, concerning this tooth?
 6   Q.   Right.
 7   A.   My teeth?  Twice.
 8             MS. POWELL:  All right.  I don't think
 9        I have any other questions.  Thanks.
10             THE WITNESS:  Can I have a copy of the
11        transcript?
12             MS. BRUCE:  I have some questions.  I
13        represent the other defendants.  I'm Ellen
14        Bruce.
15             MS. POWELL:  Then we'll talk to you at
16        the end.
17             THE WITNESS:  Oh, so you are --
18             MS. POWELL:  I just represent
19        Dr. Scholz.
20             THE WITNESS:  And your name?
21             MS. POWELL:  Theresa Powell.  And she
22        represents all the other people.
23             MS. BRUCE:  I represent Roger Walker,
24        Steven Vanstrien, Melody Ford, Deborah
```

1        Fuqua, Tara Goins.

2

3    **DIRECT EXAMINATION BY MS. BRUCE:**

4    Q.   Why are you suing Roger Walker?

5    A.   Well, he could have done something about it.

6         He's a director.

7    Q.   Did you ever speak with Director Walker?

8    A.   No.  Not personally.

9    Q.   Did you -- how did you contact Mr. Walker?

10   A.   Through the grievance system, yes.

11   Q.   And did he respond to your grievances?

12   A.   I would say yes.

13   Q.   Would you recognize Roger Walker's

14        signatures?

15   A.   No, but I have it.  I have.  .  .

16   Q.   So is that the only reason why you're suing

17        him?

18   A.   Yes, because he -- I believe that he could

19        have done something to prevent this from

20        going this far, seeing as he is the

21        director.

22   Q.   Did you ever meet him face-to-face?

23   A.   No.

24   Q.   So he was never present at any of your

1                  dental visits that you had?

2        A.    No.

3        Q.    Or your doctor visits?

4        A.    No.

5        Q.    Do you know if he's a dentist, Director

6              Walker?

7        A.    No.  I'm quite sure he isn't.

8        Q.    Why are you suing Roger Zimmerman?

9        A.    He's the warden.  He could have done

10             something to prevent this from happening.

11       Q.    And what could he have done?

12       A.    I guess he could have seen -- made sure that

13             I have treatment for gingivitis for this

14             problem.

15       Q.    Did he know that you had gingivitis?

16       A.    I would say yes.

17       Q.    And how would he have known that you had

18             gingivitis?

19       A.    Through the grievance system.  I sent the

20             request slips.  And I spoke to him once on

21             the wing when he did a little, I guess,

22             called it a walk-by or whatever, and I spoke

23             to him.  And he told me when he seen my

24             teeth and gums, he said, yeah, you got a

```
 1        problem.  And he told me send a request
 2        slip.  I sent a request slip, never
 3        responded.
 4   Q.   Did he tell you to send -- well, first of
 5        all, when did you see him?
 6   A.   I don't know exactly when.  It was '06.
 7        Maybe it was somewhere around August.
 8   Q.   So you had been to the dentist at least once
 9        by that point?
10   A.   Yeah.
11   Q.   Who did he tell you to send the request slip
12        to?
13   A.   To him.
14   Q.   Does he schedule appointments in the
15        Healthcare Unit?
16   A.   Not that I know of.  But I'm quite sure that
17        he can do whatever he wants as the warden.
18   Q.   And did you send a request slip to
19        Mr. Zimmerman?
20   A.   Yes.
21   Q.   Okay.  What did you ask for in that request
22        slip?
23   A.   I reminded him that I was having problems
24        with my gingivitis and I wasn't being seen,
```

```
 1            I wasn't being treated for it.

 2    Q.    Do you have a copy of this request slip?

 3    A.    No.

 4    Q.    Did you get any response to your request

 5          slip that you had sent to Mr. Zimmerman?

 6    A.    No.  And I believe that's the reason why I

 7          started writing grievances.  I wrote an

 8          emergency grievance to him because I knew

 9          that would go directly to him.

10    Q.    And when did you write that grievance?

11    A.    It was either 9-10 -- it had to been 9-10 --

12          9-13-06.

13    Q.    And what was his response, or what was the

14          response with that grievance?

15    A.    It was -- he marked yes, expedite emergency

16          grievance.  Or was that 10?  I'm going to

17          find it right here for you.  Just a minute.

18    Q.    Do you remember what had happened with that

19          grievance?

20    A.    The normal procedure is that once he

21          expedited -- I mean once he mark it as an

22          emergency grievance, that it go direct to

23          the grievance officer.  And the grievance

24          officer -- that was 10-06-06.  When I wrote
```

```
 1          the emergency grievance to -- it was 9-10,

 2          the first one, the first one I gave you.

 3     Q.   So your first grievance that you had filed

 4          was an emergency grievance?

 5     A.   Yes.

 6     Q.   Okay.  And Director -- or, I'm sorry, Warden

 7          Zimmerman had signed off on it as an

 8          emergency grievance?

 9     A.   Yes.

10     Q.   And then what happened next?

11     A.   It went to Tara Goins.  And she did some

12          type of -- she spoke to someone and

13          recommended that the grievance be denied,

14          and he concurred with it based on what she

15          said.

16     Q.   Do you know who she spoke with, Ms. Goins?

17     A.   She spoke with Deborah Fuqua and Dr. Scholz.

18     Q.   Okay.  And who is Debbie Fuqua?

19     A.   She was the Healthcare Administrator for

20          Western Illinois.

21     Q.   And were you present for any of these

22          conversations that Ms. Goins had with either

23          the dentist or Ms. Fuqua?

24     A.   No.
```

```
 1    Q.    So all the information that you have is

 2          contained in her grievance response?

 3    A.    Yes.

 4    Q.    Did you contact Mr. Zimmerman any other way

 5          than when you had seen him on your

 6          gallery --

 7    A.    After that I didn't see him anymore.

 8    Q.    When you said that he had looked at your

 9          teeth?

10    A.    Yes.

11    Q.    Is he a dentist?

12    A.    No.

13    Q.    You're also suing Melody Ford.  Why are you

14          suing Melody Ford?

15    A.    She reviewed my grievance after it was

16          denied and she recommended that it be denied

17          also based --

18    Q.    Do you know what her title is?

19    A.    She's a board member.

20    Q.    Is she a member of the Administrative Review

21          Board?

22    A.    Yeah.

23    Q.    And did you ever see her face-to-face?

24    A.    No.
```

| | | |
|---|---|---|
| 1 | Q. | So the only contact you had with her was |
| 2 | | through her response to your grievance? |
| 3 | A. | Yes. |
| 4 | Q. | She denied it.  So she never saw your teeth? |
| 5 | A. | No. |
| 6 | Q. | She never had any idea other than the |
| 7 | | information provided to her in the grievance |
| 8 | | process? |
| 9 | A. | Yes. |
| 10 | Q. | Did you ever contact her through any other |
| 11 | | way other than through the grievance |
| 12 | | process? |
| 13 | A. | No. |
| 14 | Q. | So she was never present at the prison at |
| 15 | | any of your visits or any of your dental |
| 16 | | exams that you had had? |
| 17 | A. | No. |
| 18 | Q. | And then with Deborah Fuqua, why are you |
| 19 | | suing her? |
| 20 | A. | She also could have -- that's the first |
| 21 | | person that my dental request went to.  And |
| 22 | | I believe she forwarded it to Dr. Scholz. |
| 23 | | Sometime after that I wrote her more request |
| 24 | | slips, let her know that Dr. Scholz wasn't |

```
 1        giving me any treatment.  And I think in one
 2        of the grievances she wrote that I was seen.
 3        She just basically said I was seen by the
 4        dentist and that cleaning was not performed
 5        at WICC.
 6   Q.   How do you know your request slips went to
 7        Defendant Fuqua?
 8   A.   That's who I addressed them to.
 9   Q.   Do you think anybody else might have opened
10        those requests?
11   A.   It's possible.
12   Q.   How did you file these requests?
13   A.   Through the request procedures that they
14        have down in Western.
15   Q.   So you didn't hand them directly to
16        Defendant Fuqua?
17   A.   No, no.
18   Q.   Did you ever meet with her face-to-face?
19   A.   No.
20   Q.   So was her only interaction then through the
21        grievance process?
22   A.   Grievance process and request slips.
23   Q.   Was she ever at -- present for any of your
24        dental treatment?
```

1    A.    No, not that I know of.

2    Q.    Was she ever present at any of your doctor's

3          exams that you had in relation to your

4          treatment?

5    A.    Not that I know of, because I don't even

6          know how she looks, so she could have been

7          standing right next to me and I don't know.

8    Q.    So you've never seen her?

9    A.    No.

10   Q.    As far as you know?

11   A.    As far as I know.

12   Q.    Okay.  Why are you suing Tara Goins?

13   A.    Tara Goins, she's the grievance officer and

14         she could have, you know, she could have --

15         she could have done more than what she done.

16         She could have reviewed all the facts that I

17         gave to her.  She could have seen me

18         personally if she wanted to.  And she could

19         have recommended to Warden Zimmerman that I

20         be seen by a dentist or somebody by the

21         outside.  That was her job.  And she never

22         seen me.  She just took the information that

23         was inside of my reports, my grievance

24         reports, and went off of that.

1    Q.    What facts did you provide her with?

2    A.    As much as possible.  That my teeth was

3          bleeding, that I seen the dentist, what his

4          responses were, that I was in pain, that I

5          couldn't eat, that I believe I also outlined

6          to her that by me not receiving treatment,

7          that this was some sort of cruel and unusual

8          punishment.

9    Q.    Was all this information in your grievance,

10         or did you provide her with additional

11         information?

12   A.    It was in my grievance.

13   Q.    And how do you know that she didn't take

14         that into account when she responded to your

15         grievance?  Just because she decided that

16         you didn't -- that she denied your

17         grievance?  Is that what you.  .  .

18   A.    Well, I figured if she read the grievance,

19         then she would have took all them things

20         into account.  And, I mean, her response was

21         based upon a review of all total available

22         information.  She recommended that the

23         grievance be denied.  So I'm assuming off of

24         what her recommendations say, a total review

```
 1          of all available information, she said that

 2          she think that my grievance should be

 3          denied.  So she -- she say a total review,

 4          meaning that she read my grievance, and I

 5          guess in total and all.

 6     Q.   Do you think she took into consideration

 7          information from the Healthcare Unit?

 8     A.   Do I think she did?

 9     Q.   Yes.

10     A.   I think she spoke to them and wrote their

11          responses down, but I don't -- I don't think

12          she really took them into consideration.

13     Q.   Okay.  And you said that she had never met

14          with you face-to-face?

15     A.   Tara Goins, no.

16     Q.   So your only interaction with her then was

17          through the grievance process?

18     A.   Yes.

19     Q.   So she was never present at any of your

20          dental treatment?

21     A.   No.

22     Q.   As far as you know, is she a dentist?

23     A.   No.

24     Q.   Does she have any medical background, as far
```

```
 1          as you know?

 2     A.   Not that I know.

 3     Q.   Is there any other reason that you were

 4          suing her for, or is it just what we've

 5          talked about?

 6     A.   Just what we've talked with.  I believe she

 7          could have -- at each one of these points I

 8          believe that this could have been remedied.

 9          Each one of them had the authority to do so

10          and it was -- it was within their physical

11          capacity to give me dental -- to give me

12          dental treatment.  Any one of them could

13          have.  Even the counselor could have

14          spoke -- could have did more than he did

15          instead of him -- I don't know if he talked

16          to these people -- it seemed like one of the

17          counselors might have spoke to Deb Fuqua and

18          Dr. Scholz, but it seemed like that's it.

19          It was just -- just filling in the blanks.

20     Q.   Okay.  And --

21     A.   Going through the red tape.

22     Q.   How would you say they could have remedied

23          the situation; what would have been the

24          remedy in your view?
```

```
 1   A.   In the beginning of the -- my gingivitis

 2        problem, I think that maybe some type of

 3        products could have been provided to subdue

 4        gingivitis.  At that time I was seeing

 5        dental products that says fights gingivitis

 6        or reverses gingivitis, and I asked Dr.

 7        Scholz if I could pay for them products

 8        myself, and he told me no.  So --

 9   Q.   Did you ever ask the defendants that we've

10        been talking about right now for these

11        products?

12   A.   Just Dr. Scholz, 'cause I knew that was the

13        only person that could provide them to me.

14   Q.   So is it your understanding then that the

15        other defendants could not have prescribed

16        any of these products that you had seen on

17        television?

18   A.   Yes.

19   Q.   Is it your understanding that any of the

20        defendants could not have prescribed any

21        treatment for you?

22   A.   All except for the warden.  The warden could

23        have okayed for me to get products,

24        different products if I was paying for them.
```

```
 1           I seen situations like that before.
 2    Q.     Were these prescription products?
 3    A.     No, not prescription products.  Crest.  Over
 4           the counter products.  Crest.  Mouthwash and
 5           different --
 6    Q.     Did you ask for that stuff, Warden
 7           Zimmerman?
 8    A.     No, I knew the procedure was to go through
 9           Dr. Scholz and he would have to do some type
10           of paperwork and then get the warden to okay
11           it, and he refused to do that.
12    Q.     And did you make this request in writing?
13    A.     I spoke to Dr. Scholz in person about that.
14    Q.     Okay.  Were any of the defendants present
15           when you spoke with Dr. Scholz about this?
16    A.     No.
17    Q.     You also said that the defendants had the
18           authority to -- from my perspective it
19           sounds like to override the doctor's -- what
20           he had decided to do.
21    A.     No, but -- not the authority to override
22           what he said, but I believe that they had
23           the authority to look into this issue a
24           little bit more than what they did and could
```

```
 1              have recommended that treatment be given to

 2              me by Dr. Scholz or someone other than

 3              Dr. Scholz.

 4     Q.       Do you think that they had the authority to

 5              override Dr. Scholz's opinion?

 6     A.       If it's wrong, I believe so.

 7     Q.       Okay.  Do you think again, do you think that

 8              any of these defendants that we've been

 9              speaking about were dentists or had medical

10              backgrounds?

11     A.       No, but I think anybody could have seen that

12              it was a problem.  Just open my mouth and

13              look at it.  And I think a two-year-old

14              child with this could have seen, hey,

15              there's a problem there --

16     Q.       Did any of these defendants -- you said that

17              Roger Zimmerman had seen your mouth, your

18              issues.  Had any of the other defendants

19              looked into your mouth to see what was going

20              on?

21     A.       I believe maybe the counselor, one of the

22              counselors that I saw.

23     Q.       Which one was it?

24     A.       One of the counselors I saw showed my teeth
```

```
 1              to.
 2    Q.        Did you show them -- was it Steven
 3              Vanstrien?
 4    A.        Yeah.
 5    Q.        And when did that happen?
 6    A.        I don't know the exact date, but it was
 7              sometime in '06.  It had to been 8, 9, 10.
 8    Q.        Where did that take place?
 9    A.        In Western Illinois.
10    Q.        Where did you see Mr. Vanstrien?
11    A.        Oh, the counselor.  Housing Unit 4.
12    Q.        And was this before or after you filed a
13              grievance?
14    A.        This was before.
15    Q.        Why had he come to your housing unit?
16    A.        Why?
17    Q.        Yes.
18    A.        He was a counselor.  He was our assigned
19              counselor.
20    Q.        Did he visit on a regular basis?
21    A.        Yes.
22    Q.        Did you complain to him of your dental care?
23    A.        I wrote the grievance.  And when I wrote the
24              grievance, I think I went to his office and
```

1          seen him and I told him I was having

2          problems with my teeth.  And I -- I believe

3          I tried to show him my teeth and he said,

4          well, he's going to check into it.  And I

5          got a response back and he say -- well, he

6          didn't say that he spoke.  The response was

7          from Deb Fuqua, and she said that she spoke

8          to Dr. Scholz.  That response is in my first

9          grievance dated 9-13-06.

10    Q.    How often did you see Mr. Vanstrien?

11    A.    I think I seen him once.

12    Q.    And so at that one time that you saw him is

13          when you showed him your teeth?

14    A.    Yeah.

15    Q.    Okay.  And was he a dentist?

16    A.    No.

17    Q.    Did he have the authority to override any of

18          the doctor's decisions that they were going

19          to make about your dental care and

20          treatment?

21    A.    No.

22    Q.    So he wasn't somebody that came around to

23          your housing unit on a regular basis then?

24    A.    Yes.

1    Q.    But you only spoke with him once?

2    A.    Yes, concerning this issue.

3    Q.    Did you speak with him about other issues

4          that you had then?

5    A.    I don't know if I did or not.

6    Q.    So you would see -- how often would you see

7          him in your housing unit?  Like how often

8          did he make rounds?

9    A.    I think he was there three, four times a

10         week maybe.

11   Q.    And were you in the same housing unit your

12         entire time at Western?

13   A.    No.

14   Q.    So was he the counselor that went to each

15         housing unit when you moved?

16   A.    He was only in one housing unit.

17   Q.    How long were you in that housing unit for?

18   A.    A few weeks maybe.

19   Q.    Okay.  And you had said earlier that you

20         only complained to him one time about your

21         dental care?

22   A.    Uh-huh.  Uh-huh.  Yes, that's correct.

23   Q.    In your complaints you talk about you had

24         asked for a transfer because the doctor had

```
 1            recommended that if you wanted treatment,
 2            that you could go to another facility where
 3            they might be able to offer you --
 4    A.      Yes.
 5    Q.      Did you ask for a transfer?
 6    A.      Yes.
 7    Q.      Okay.  When did you ask for this transfer?
 8    A.      I believe I was in Housing Unit 2 at the
 9            time.  But I didn't ask formally, you
10            know -- I spoke to a counselor.  And the
11            counselor --
12    Q.      Was it Defendant Vanstrien?
13    A.      Yes, it was a different one.  I asked the
14            counselor about a medical transfer, and the
15            counselor told me that if that -- that kind
16            of transfer need to be requested by a
17            doctor, which was Dr. Scholz.  So they
18            was -- I felt like they was sending me in
19            circles.  One was saying this, another one
20            was saying that.
21    Q.      Did the doctor say that you needed to ask
22            for a medical transfer or --
23    A.      He suggested that.
24    Q.      Okay.  Could you have been -- could you have
```

1      requested you just be transferred, not a

2      medical transfer?

3   A.  Not at that time.  I mean I could have, but

4      it would have been denied.

5   Q.  Why would it have been denied?

6   A.  I didn't have enough time in the

7      institution.  Their policy is they have to

8      observe a person for at least six months

9      before you can request a transfer.

10  Q.  Okay.  So you don't know when you had asked

11     for that transfer?  Was it in September of

12     '06?  When did you ask for it?  Even when

13     you had just informally asked for it.

14  A.  It was right after Dr. Scholz suggested it

15     to me.

16  Q.  So was that at your July 5, 2006, meeting?

17  A.  No, that was in 10-03-06.

18  Q.  And did you ask for a transfer anytime after

19     that?

20  A.  Anytime after that point, yes, I did.

21  Q.  When did you ask for a transfer a second

22     time?

23  A.  It wasn't concerning the medical transfer.

24     It was just a regular transfer.  And that --

```
 1            that was 7-27-07.

 2    Q.     And who did you send that request to?

 3    A.     Karen Wear, W-E-A-R.

 4    Q.     And had you requested from her earlier for

 5           your first request, or did you just ask the

 6           counselor and you were told you wouldn't be

 7           able to transfer?

 8    A.     No, my transfer was approved.

 9    Q.     Your July 27, '07, transfer?

10    A.     Yes.

11    Q.     Okay.  When you had originally asked the

12           counselor about the medical transfer the

13           first time around, did you ever file a

14           formal transfer request?

15    A.     No, I did it the same way you supposed to

16           do.  You go in the counselor's office and

17           ask for a transfer.

18    Q.     Which counselor was that again that you had

19           gone to the first time?

20    A.     I don't know.

21    Q.     Do you know if it was Defendant Vanstrien?

22    A.     No, it wasn't Vanstrien.

23    Q.     Okay.  Okay.  So none of the defendants that

24           we've been talking about denied your
```

1          transfer?

2     A.   Well, it wasn't denied.  They told me the

3          proper procedure.  And they said for a

4          medical transfer have to be done through the

5          doctor.  And at that time I knew the doctor,

6          he didn't want to see me no more.  He wasn't

7          even answering my request slips anymore.

8     Q.   So did you ask any of the defendants for a

9          transfer that first time back in 2006?

10    A.   No.

11    Q.   And then when you requested the transfer

12         July 27 of 2007, your request was granted?

13    A.   Yes.

14    Q.   And did any of the defendants -- were any of

15         the defendants involved with this July 27,

16         2007, transfer?

17    A.   I don't know that process and who all is

18         involved.

19    Q.   Okay.  But your response -- your request was

20         granted?

21    A.   Yes.

22    Q.   And had you requested to be transferred to

23         Illinois River?

24    A.   Yes.

```
 1   Q.   Did you -- how does it -- did you ask for

 2        several facilities and you just got one of

 3        them that you requested?

 4   A.   I think it was three facilities, but

 5        Illinois River was the primary place that I

 6        explored.  It was my initial request.

 7   Q.   Okay.  And you've been here now for three

 8        weeks?

 9   A.   Yes.

10   Q.   Is there any other reason why you're suing

11        the defendants that we've been speaking

12        about today?

13   A.   No, except for I believe that they could

14        have -- they could have stopped this before

15        it even got this far, either one of them, if

16        they wanted to.

17   Q.   And how could they have stopped it?

18   A.   As far as their job description.  The

19        orientation manual, if you have a problem,

20        you first go to a counselor.  If the

21        counselor can't solve the problem, you can

22        write a grievance.  The grievance go back to

23        the counselor.  If it's not resolved, it go

24        to the grievance officer.  If it's not
```

1    resolved on that level, then it can go to
2    the Administrative Review Board.  So I did
3    all that.
4  Q.  And all those steps were followed?
5  A.  Yes.
6  Q.  And the only issue that you have is the
7    outcome that they did not grant your
8    grievance or the issues that you complained
9    of in your grievance?
10 A.  Yes.
11 Q.  That your grievance had been denied?
12 A.  Yes.
13    MS. BRUCE:  I don't have any other
14   questions.
15    MS. POWELL:  I just have a couple
16   more.
17
18 **REDIRECT EXAMINATION BY MS. POWELL:**
19 Q.  How long do you brush your teeth?
20 A.  About two minutes.
21 Q.  Did you get any refreshers on how to brush
22   your teeth from the Dental Department?  Did
23   you ask for that?
24 A.  From Dr. Scholz?

1    Q.    From anyone there.

2    A.    No, I went to a book in the library, John

3          Hopkins Medical Reference.  Dr. Scholz did

4          them for me.  He said I need to brush after

5          every meal, at least after every meal, and

6          floss after every meal.

7    Q.    And are you doing that now?

8    A.    Yes.  I brush after every meal.  I brush

9          when I wake up.  I brush before I go to

10         sleep.

11   Q.    And would you agree that that has helped?

12   A.    At that time it wasn't doing nothing.

13   Q.    Well, would you agree that it's helped your

14         condition now?

15   A.    No.

16   Q.    You wouldn't agree to that?

17   A.    No.

18   Q.    That it's helping your condition?

19   A.    No.

20   Q.    Why not?

21   A.    It's basic dental hygiene.  And, I mean, I'm

22         not a dentist.  I don't know if it's

23         helping, but I believe that this was what I

24         done for a year and it didn't -- it didn't

1    do anything. My gingivitis progressed, if

2    anything. So I'm assuming that it -- it

3    didn't help then, it's not helping now. And

4    maybe in some type of way, I don't know,

5    maybe it is. Maybe it keeps the plaque down

6    and that. I don't know.

7  Q.  Describe what I would have seen in your

8    mouth during the time you were complaining

9    of these problems.

10 A.  Red, swollen gums, been blood around them.

11    That's about what you would have seen.

12 Q.  And how long --

13 A.  A mouth full of blood.

14 Q.  And how long were your teeth like that -- or

15    were your gums like that?

16 A.  About a year. But it wasn't -- the severity

17    was changed throughout the year. It wasn't

18    constant. It went from like maybe every two

19    or three days it would bleed, and then when

20    it started to -- it wasn't all the way up to

21    just constant bleeding.

22 Q.  Did your gums bleed when you brushed your

23    teeth?

24 A.  Yeah, severely.

1    Q.   Did they bleed when you would floss your

2         teeth?

3    A.   Severely, yes.

4    Q.   And when you floss now, has that gone away?

5    A.   It's gone away now.  All the symptoms -- all

6         the symptoms I tell you about, told you

7         about, they stopped about a week -- about a

8         week, week and a half after Dr. Scholz root

9         planed and scaled my teeth and gave me the

10        antibiotics.  So I feel like that year of

11        suffering and going through all that pain

12        was unnecessary when he could have done that

13        in the first place when he first diagnosed

14        me with my gingivitis.  That would have been

15        over with.  But like he told me, he had more

16        severe problems to deal with than me.

17             MS. POWELL:  All right.  I don't have

18         any other questions.  Thank you.

19              You have a right to read the

20         deposition transcript to review it to make

21         sure that the court reporter took everything

22         down accurately.  Or you can waive that

23         right and assume that she did it.  But you

24         have to let us know today whether you want

1          to review it or whether you want to waive

2          that right.

3                    THE WITNESS:  And so how do I review

4          it?  What does that entail?

5                    MS. POWELL:  The deposition transcript

6          will be sent to the correctional facility

7          and they will bring you in a room and have

8          you look at it.

9                    THE WITNESS:  So I couldn't pay for a

10         copy?

11                   MS. POWELL:  You can buy a copy as

12         well.

13                   THE WITNESS:  Okay.  Okay.

14                   MS. POWELL:  That's completely

15         separate.  Off the record.

16

17

18

19

20

21              FURTHER DEPONENT SAITH NOT.

22

23

24

1    STATE OF ILLINOIS    )
                          )
2    COUNTY OF KNOX       )

3

4

5                    C E R T I F I C A T E

6        I, Amy S. Powers, CSR, RPR, a Notary Public

7    duly commissioned and qualified in the State of

8    Illinois, DO HEREBY CERTIFY that pursuant to

9    notice there came before me on the 29th day of

10   January 2008, at Illinois River Correctional

11   Center, Route 9 West, in the City of Canton,

12   County of Fulton, and State of Illinois, the

13   following named person, to wit:

14

15            MICHAEL STEVENSON, #N93569,

16

17   who was by me first duly sworn to testify to the

18   truth and nothing but the truth of his knowledge

19   touching and concerning the matters in

20   controversy in this cause and that he was

21   thereupon carefully examined upon his oath and

22   his examination immediately reduced to shorthand

23   by means of stenotype by me.

24       I ALSO CERTIFY that the deposition is a true

1    record of the testimony given by the witness and

2    that the necessity of calling the court reporter

3    at time of trial for the purpose of

4    authenticating said transcript was also waived.

5        I FURTHER CERTIFY THAT I am neither attorney

6    or counsel for, nor related to or employed by,

7    any of the parties to the action in which this

8    deposition is taken, and further, that I am not a

9    relative or employee of any attorney or counsel

10   employed by the parties hereto, or financially

11   interested in the action.

12       IN WITNESS WHEREOF, I have hereunto set my

13   hand and affixed my notarial seal at Galesburg,

14   Illinois, this 15th day of February 2008.

15

16

17   _____
     AMY S. POWERS

18   Certified Shorthand
     Reporter

19

20   "OFFICIAL SEAL"
     Amy S. Powers
     Notary Public, State of Illinois
21   My Commission Exp. 07/21/2009

22

23

24