UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MICHAEL STEVENSON,
            Plaintiff,

v.     07-3108

SCHOLZ, R. ZIMMERMAN, RODGER E. WALKER, JR., MELODY FORD, D. FUQUA, TARA GOINS, and VAN STRIEN.
            Defendants.

MEMORANDUM OPINION AND ORDER

Before the court are the Defendant, Robert Scholz's summary judgment motion pursuant to Federal Rule 56 [39], the plaintiff's response [47] and [48], Scholz's reply [48], Defendants, Zimmerman, Walker, Ford, Fuqua, Goins, and VanStrien's summary judgment motion [36] and the plaintiff's response [40] and defendants' reply [45].

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge

may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

The Plaintiff in this case has filed a lawsuit against Dr. Scholz, a dentist who provides care and treatment to inmates at the Western Illinois Correctional Center. Pursuant to this court's Case Management Order No. 1 dated May 3, 2007, the court found that Plaintiff's complaint stated a claim for deliberate indifference to a serious dental need. Defendant admits that Plaintiff suffered from gingivitis; however, Defendant denies that Plaintiff's condition constituted a serious medical need. Nevertheless, Defendant denies that any act or omission on his part constituted deliberate indifference to a serious medical need of the Plaintiff. Defendant Scholz now brings this Motion for Summary Judgment [39] as there are no genuine issues of material fact regarding the care and treatment provided to Michael Stevenson.

## Undisputed Material Facts[1]

1. According to Plaintiff's medical records, it appears that he was screened and oriented to the Western Illinois Correctional Center in May of 2006. (Exhibits 1 and 1-A.)
2. In general, Dr. Scholz would not be advised of Plaintiff's medical complaints which were not dental related. These complaints would be directed to the nursing staff and potentially to the Medical Director. (Exhibit 1.)
3. Unless the nurse or physician referred the patient to the dental office following a complaint, Dr. Scholz would not be made aware of complaints concerning an inmate's mouth. (Exhibit 1.)
4. The first reference in the medical records to any problems regarding the patient's mouth appears on December 11, 2006. According to Dr. Brown's note, the patient reported that his gums were bleeding despite flossing. Dr. Brown's note indicates that he would discuss this with dental. (Exhibits 1 and 1-B.)
5. There do not appear to be any additional medical complaints concerning the patient's mouth or teeth in the Plaintiff's medical file. (Exhibit 1.)
6. In the course of Dr. Scholz's practice as a dentist at the Western Illinois Correctional Center, he did see an inmate by the name of Michael Stevenson. His dental records attached hereto include Exhibits 1-C and 1-D.
7. Exhibit 1-C identifies that Mr. Stevenson did have moderate periodontal disease when Dr. Scholz saw him in July of 2006. (Exhibit 1.)
8. Notes of Dr. Scholz's care and treatment from July 5, 2006 through September 12, 2007 are shown on Exhibit 1-D.

---

[1]Undisputed Facts are taken from Scholz's summary judgment motion [39].

9. On July 5, 2006 at 8 a.m., Mr. Stevenson came to see Dr. Scholz for complaints of bleeding gums. Dr. Scholz diagnosed him with moderate gingivitis and he was provided with oral hygiene instructions. (Exhibits 1 and 1-D.)

10. On August 6, 2006, Plaintiff returned complaining of problems with his gums from food getting packed between his teeth. Plaintiff was wanting a cleaning. Oral health instructions were given to him. (Exhibits 1 and 1-D.)

11. At that time, Dr. Scholz explained to Mr. Stevenson that dentists did not provide cleanings and there was no dental hygienist at Western Illinois Correctional Center to perform that function. (Exhibit 1.)

12. In Dr. Scholz's practice as one of the dentists at the Western Illinois Correctional Center, he took care of inmates' teeth in the order of worst to best. Mr. Stevenson did not have a significantly serious condition to warrant immediate treatment for his complaints. There were many other inmates who had immediate and emergent problems that needed to be addressed first. (Exhibit 1.)

13. The Department of Corrections has Administrative Directives which categorize dental problems from Category I to Category VI. (Exhibit 1.)

14. Mr. Stevenson's moderate gingivitis was not a Category I condition. (Exhibit 1.)

15. Dr. Scholz would have considered Mr. Stevenson's gingivitis to be a Category III or Category II condition. (Exhibit 1.)

16. At the time Dr. Scholz first saw Mr. Stevenson, he explained to him the need and requirement to provide care and treatment to those patients who suffered Category I conditions first. (Exhibit 1.)

17. Dr. Scholz advised Mr. Stevenson that he needed to practice good oral hygiene and by doing so, his teeth would be cleaner in order to halt and prevent worsening of his condition. (Exhibit 1.)

18. On October 3, 2006, Mr. Stevenson came back to the dental unit again asking for a cleaning. Dr. Scholz advised him that him his teeth were not bad enough to warrant bumping off or fillings. Dr. Scholz suggested that he ask for a transfer. (Exhibits 1 and 1-D.)

19. On October 3, 2006, Dr. Scholz explained to Mr. Stevenson that the Western Illinois Correctional Center did not have a dental hygienist but that other facilities may have one. He may possibly be able to get his teeth cleaned there in an effort to treat or prevent worsening of his gingivitis. (Exhibit 1.)

20. On October 24, 2006, Mr. Stevenson appeared in the dental unit but was not seen by Dr. Scholz. (Exhibit 1.)

21. On December 19, 2006, Dr. Scholz responded to a grievance regarding Mr. Stevenson's complaints that Dr. Scholz was not treating his dental health appropriately. Dr. Scholz advised him that his gingivitis was not emergent. (Exhibits 1 and 1-D.)

22. Mr. Stevenson complained of terrible pain, headaches, and severe bleeding. Dr. Scholz noted that on examination, there was no objective evidence to verify the complaints made by the Plaintiff in his grievance. Dr. Scholz found no dental reason to be causing Plaintiff's complained of pain or headaches. He saw no severe bleeding. (Exhibit 1.)

23. Again, Dr. Scholz explained and provided Mr. Stevenson with oral health information. (Exhibit 1.)

24. The next time Dr. Scholz saw Mr. Stevenson was on July 31, 2007. At that time, Dr. Scholz examined Mr. Stevenson's gums and determined that he would perform a deep scaling and root planing in an effort to address his gingivitis. (Exhibit 1.)
25. These procedures were performed on August 8, 2007. (Exhibits 1 and 1-D.)
26. Dr. Scholz examined Mr. Stevenson's gums again on September 12, 2007. At that time, his gums looked much better than they had before. (Exhibits 1 and 1-D.)
27. At that time, Dr. Scholz determined that Mr. Stevenson's complaints regarding his gums were resolved. His periodontal disease in the form of gingivitis was under control and that with proper oral hygiene, Mr. Stevenson should not have significant problems. (Exhibit 1.)
28. So long as Mr. Stevenson maintains proper oral hygiene, he should not have any medical problems relating to gingivitis. (Exhibit 1.)
29. At no time did Dr. Scholz consider Mr. Stevenson's gingivitis to be a serious medical need in need of immediate medical treatment. (Exhibit 1.)
30. Dr. Scholz considered Mr. Stevenson's gingivitis to be moderate. This level of gingivitis did not, in and of itself, create a risk of substantial harm to Mr. Stevenson. (Exhibit 1.)
31. In Dr. Scholz's opinion, Mr. Stevenson's complaints of pain and headaches were not related to his periodontal disease at any time. These are medical conditions which should have been, and could have been treated by a physician and not by a dentist. (Exhibit 1.)
32. With respect to Mr. Stevenson's complaints of bleeding, this is a common condition associated with poor oral hygiene. Bleeding is not painful and often occurs in gums where an individual has not maintained proper oral hygiene. (Exhibit 1.)
33. Bleeding gums and periodontal disease do not prevent someone from being able to eat. (Exhibit 1.)
34. At no time did Mr. Stevenson ever suggest to Dr. Scholz that he was having any difficulty eating. (Exhibit 1.)
35. Dr. Scholz prescribed Tetracycline, an antibiotic, on August 8, 2007 in conjunction with the root cleaning procedure he performed. (Exhibits 1 and 1-E.)
36. Dr. Scholz again prescribed Tetracycline, an antibiotic, on September 12, 2007. (Exhibits 1 and 1-F.)
37. The next time Dr. Scholz saw Mr. Stevenson was October 10, 2007. At that time, Dr. Scholz noted that Mr. Stevenson's gums continued to look good. (Exhibits 1 and 1-G.)
38. Dr. Scholz saw Mr. Stevenson again on October 24, 2007. Dr. Scholz provided him with 30 more tablets of an antibiotic to address any threat of infection from the presence of any possible bacteria that may have been present in Mr. Stevenson's mouth at or near the site of the area where Dr. Scholz conducted the deep scaling procedure on August 8, 2008. (Exhibits 1 and 1-G.)
38. In Dr. Scholz's opinion, Mr. Stevenson's gingivitis was progressing appropriately and satisfactorily. (Exhibit 1.)
39. His condition did not pose a risk of substantial harm to his health at any time. (Exhibit 1.)
40. Shortly thereafter, it appears that Mr. Stevenson was transferred to the Illinois River Correctional Center. Dr. Scholz does not provide dental services at that facility. Dr. Scholz no longer is in contact with Mr. Stevenson and has no knowledge regarding the current status of his gingivitis and/or his gums or teeth. (Exhibit 1.)

41. As of the time that Mr. Stevenson left Dr. Scholz's care, his gums were in satisfactory condition. (Exhibit 1.)
42. Gingivitis in Mr. Stevenson's form was not an emergent medical need, nor was it the type of condition that was at imminent risk of causing him substantial harm. (Exhibit 1.)
43. Dr. Scholz is aware of no medical conditions caused by Mr. Stevenson's gingivitis. (Exhibit 1.)
44. Gingivitis is a periodontal disease. This condition is common in the general population and is even more common to inmates. (Exhibit 1.)
45. Inmates, in general, tend to have poor dental hygiene which contributes to the development of gingivitis. (Exhibit 1.)
46. Gingivitis is caused by and is aggravated by a buildup of plaque and/or tartar on the gums and teeth which, if it is not removed, may cause the condition to progress. (Exhibit 1.)
47. There are various forms of gingivitis from mild to severe. (Exhibit 1.)
48. Mr. Stevenson suffered from moderate gingivitis. (Exhibit 1.)
49. Gingivitis in its most severe form can contribute to the development of serious medical issues. (Exhibit 1.)
50. However, Mr. Stevenson's gingivitis had not risen to a level which could pose a risk of harm to Mr. Stevenson's overall health status. (Exhibit 1.)
51. The root planing and scaling performed in August of 2007 addressed the gingivitis and prevented Plaintiff from developing any medical complications from his then-present form of gingivitis. (Exhibit 1.)
52. The complaints of bleeding and swollen gums made by Mr. Stevenson were alleviated with this procedure. (Exhibit 1.)
53. Not all individuals who suffer from gingivitis require a root planing and scaling procedure. (Exhibit 1.)
54. Most individuals can be treated with dental cleanings, when available. (Exhibit 1.)
55. Dr. Scholz does not consider gingivitis to be a condition which requires a consultation with an outside specialist. (Exhibit 1.)
56. Bleeding is a common symptom from gingivitis. (Exhibit 1.)
57. The common form of treatment for gingivitis is proper dental hygiene. In most cases, proper dental hygiene and cleanings can halt the progression of gingivitis. (Exhibit 1.)
58. The antibiotics given to Mr. Stevenson were provided in association with the root planing and scaling and this procedure may allow bacteria to travel deep into the gums where the procedure took place. The antibiotics are given to prevent an infection from developing during that time frame. (Exhibit 1.)
59. Antibiotics are not required as a standard of care to address bleeding gums. (Exhibit 1.)
60. Overuse of antibiotics may actually create greater risks of harm for patients who have no medical need for those specific medications. (Exhibit 1.)
61. In the course of this case, Dr. Scholz has reviewed medical records in search of evidence regarding Mr. Stevenson's overall health from July 2006 through August of 2007. (Exhibit 1.)
62. It should be noted that before July 5, 2006 (the date of Dr. Scholz's visit with Mr. Stevenson), the last time Plaintiff was weighed was June 19, 2006. (Exhibits 1 and 1-J.) At that time, Mr. Stevenson was seen by Dr. Brown for complaints of his left foot, the

orthopedic problems. Plaintiff had been complaining of ankle pain, which was now less swollen as he walked. Dr. Brown's note states, "Lose 100 pounds" for the plan. (Exhibits 1 and 1-J.) The next time Plaintiff was weighed was July 21, 2006. (Exhibits 1 and 1-H.) At this time, he weighed 255 pounds. He had already lost eight pounds. There is nothing in the records to indicate that this was a result of his dental issues. In fact, Dr. Brown's record from July 21, 2006 states, "Is losing weight purposely. The orthopedic issue is resolving favorably, but he has pesky nasal allergies affecting right eye. Rhinitis." (Exhibits 1 and 1-H.) Again, Mr. Stevenson makes no reference to Dr. Brown about having any problems with his teeth. (Exhibit 1.)

63. The patient returned on August 1, 2006, again with respect to his orthopedic complaints. (Exhibits 1 and 1-H.) The Plaintiff was seen on September 17, 2006 with respect to a rash on his inner arms. (Exhibits 1 and 1-I.)

64. Mr. Stevenson was seen by medical staff on October 2 and October 19. On neither occasion did he make reference to any dental issues. (Exhibits 1 and 1-K.)

65. On October 3, 2006 and October 21, 2006, Mr. Stevenson refused to be seen by the nurses. (Exhibits 1, 1-K, and 1-L.)

66. On October 30, 2006, Mr. Stevenson was seen by Dr. Brown and was noted to weigh 252 pounds. There is no indication in this record that Mr. Stevenson was losing weight as a result of any medical condition. This is the first instance that Dr. Brown indicates that Mr. Stevenson has dental problems and specifically notes "dental caries" as a condition complained of. (Exhibits 1 and 1-L.)

67. On November 13, 2006, Mr. Stevenson complained of knots on both sides of his jaws below his earlobes. Again, no complaints regarding his teeth or mouth. (Exhibits 1 and 1-L.)

68. Caries are cavities. Cavities are not gingivitis. (Exhibit 1.)

69. Mr. Stevenson did present to Dr. Brown on December 11, 2006 with complaints of his gums bleeding despite flossing. (Exhibits 1 and 1-M.)

70. His weight on that date was 257 pounds. (Exhibits 1 and 1-M.)

71. Between January of 2007 and August of 2007 when Mr. Stevenson received his root scaling and planing, there are no references in the medical records to suggest that Mr. Stevenson was complaining of any problems attributable to his gums or teeth. (Exhibit 1 and Group Exhibit N.)

72. In addition, at the time Mr. Stevenson was seen again by Dr. Scholz in July of 2007, his medical records reflect that he weighed 257 pounds. (Exhibits 1 and 1-O.)

73. There is nothing in the records to suggest that Mr. Stevenson's weight loss was due to anything but his personal desire to lose weight after Dr. Brown advised him to do so in June of 2006, at which time he weighed 263 pounds. By the time he received his root scaling and planing, Mr. Stevenson had lost a mere six pounds and not the twenty pounds he suggests. Regardless, Dr. Brown's note suggests that Mr. Stevenson needed to lose approximately a hundred pounds as an aid to his prior medical problems. (Exhibit 1.)

74. In January of 2008, Mr. Stevenson was transferred to the Illinois River Correctional Center in good condition and he appeared to be quite healthy. (Exhibit 1.)

75. As Mr. Stevenson is no longer incarcerated at the Western Illinois Correctional Center, Dr. Scholz no longer cares for any of his dental problems and has not seen him since the date of his transfer. (Exhibit 1.)
76. As of January 29, 2008, Mr. Michael Stevenson has been incarcerated at the Illinois River Correctional Center and had been there for approximately three weeks. (Plaintiff's deposition, p. 3, pars. 7-14.)
77. Prior to that time, Mr. Stevenson had been incarcerated at the Western Illinois Correctional Center from approximately May of 2005 until his transfer to the Illinois River Correctional Center. (Plaintiff's deposition, p. 3, pars. 15-20.)
78. Mr. Stevenson cannot recall the last time he saw a dentist before his incarceration in the Cook County Jail, which took place approximately eleven months before being transferred to the Western Illinois Correctional Center. (Plaintiff's deposition, p. 4, pars. 1-21.)
79. Plaintiff asserts that the first time he was diagnosed with gingivitis was July 5, 2006, which was also the first time that he saw Dr. Scholz. (Plaintiff's deposition, p. 5, pars. 14-19.)
80. Before July 5, 2006, Mr. Stevenson had seen no other dentist at the Western Illinois Correctional Center. (Plaintiff's deposition, p. 5, pars. 20-23.)
81. Plaintiff has no understanding as to how long he suffered from gingivitis. (Plaintiff's deposition, p. 7, pars. 11-13.)
82. Before being incarcerated, Plaintiff admits that he brushed his teeth about once a day. (Plaintiff's deposition, p. 7, pars. 14-17.)
83. Before his most recent incarceration, Plaintiff had his teeth professionally cleaned by a dentist on two prior occasions. (Plaintiff's deposition, p. 8, pars. 1-10.)
84. Plaintiff has not ever had his teeth cleaned when he was not in prison or jail. (Plaintiff's deposition, p. 8, pars. 20-23.)
85. Plaintiff's claim against Dr. Scholz relates to Plaintiff's request for treatment for his gingivitis. (Plaintiff's deposition, p. 9, pars. 23-24; p. 10, pars. 1-12.)
86. Dr. Scholz advised Mr. Stevenson that there were other patients who had more severe problems than his gingivitis which required his attention. (Plaintiff's deposition, p. 10, pars. 17-23.)
87. As of the time Plaintiff's deposition was taken, Dr. Scholz had treated Mr. Stevenson's gingivitis with a scaling and root planing. (Plaintiff's deposition, p. 11, pars. 8-11.)
88. Plaintiff alleges that his gums were swollen and that he could not eat due to his gingivitis. Plaintiff also claimed of pain and temperature sensitivities. (Plaintiff's deposition, p. 11, pars. 14-24.)
89. Plaintiff understands his gums were swollen because of the gingivitis. (Plaintiff's deposition, p. 12, pars. 1-3.)
90. Plaintiff began flossing his teeth after July 5, 2006. (Plaintiff's deposition, p. 12, pars. 6-7.)
91. Plaintiff did not lose any teeth as a result of his gingivitis. (Plaintiff's deposition, p. 12, pars. 23-24.)
92. Plaintiff has no current problems associated with his teeth. (Plaintiff's deposition, p. 14, pars. 2-4.)

93. Plaintiff no longer treats with Dr. Scholz since he has been transferred to the Illinois River Correctional Center. (Plaintiff's deposition, p. 14, pars. 5-20.)
94. Plaintiff claims that his problems got worse between July 5, 2006 and July of 2007. (Plaintiff's deposition, p. 14, pars. 5-17.)
95. Dr. Scholz performed a scaling and root planing procedure sometime after August of 2007. (Plaintiff's deposition, p. 17, pars. 1-8.)
96. Plaintiff has had teeth pulled in the past. (Plaintiff's deposition, p. 18, pars. 10-11.)
97. Plaintiff believes these teeth were pulled when one was cracked and had a wisdom tooth pulled because it grew in the wrong direction. (Plaintiff's deposition, p. 18, pars. 10-24.)
98. One of these teeth Plaintiff pulled out himself. (Plaintiff's deposition, p. 19, pars. 13-17.)
99. At the time Plaintiff's deposition was taken in January of 2008, his gums were not swollen. (Plaintiff's deposition, p. 20, pars. 4-5.)
100. He no longer has bleeding of his teeth. (Plaintiff's deposition, p. 20, pars. 6-7.)
101. Plaintiff claims he lost some weight. (Plaintiff's deposition, p. 13, pars. 1-2.)
102. Plaintiff did not gain back the weight he had lost, but he did not want to gain this weight back. (Plaintiff's deposition, p. 20, pars. 6-11.)
103. Plaintiff admits that he looks better and feel better now that he has lost some weight. (Plaintiff's deposition, p. 20, pars. 12-14.)
104. Plaintiff has no other medical conditions. (Plaintiff's deposition, p. 20, pars. 20-24; p. 21, pars. 1-3.)
105. Plaintiff claims that he also had headaches. However, he admits that no physician has related his headaches to his teeth. (Plaintiff's deposition, p. 22, pars. 20-22.)
106. Plaintiff describes his mouth during the time that he suffered from gingivitis as having red, swollen gums and blood in his mouth. (Plaintiff's deposition, p. 50, pars. 1-24; p. 51, pars. 1-3.)
107. At the present time, these problems have gone away since Dr. Scholz performed the root planing and scaling and provided him with antibiotics. (Plaintiff's deposition, p. 51, pars. 4-16.)

Discussion and Conclusion of Law

Defendant Scholz argues that he is entitled to summary judgment as there are no genuine issues of material fact which would establish that his care and treatment constitutes deliberate indifference to a serious medical need. In order to make a claim under the Eighth Amendment for failure to provide adequate medical treatment, an inmate must demonstrate that his condition is objectively serious and that the defendant was subjectively deliberately indifferent to that condition. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *see also, Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). Serious medical needs are those conditions that are life threatening or that carry risks of permanent serious impairment if left untreated. *Gutierrez*, 111 F.3d at 1371-73. Defendants acknowledge that the Seventh Circuit has previously found that dental care is one of the most important medical needs of inmates. *See, Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Other courts in other jurisdictions have held that dental pain accompanied by various degrees of medical harm may constitute an objectively serious medical need. *See, Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984); *see also, Penrod v. Zavaras*, 94 F.3d 1399, 1406

(10th Cir. 1996). The Seventh Circuit has recognized that periodontal disease can be considered a serious medical condition. *See, Board v. Farnam*, 394 F.3d 469, 480 (7th Cir. 2005). In *Board v. Farnam*, the court indicated in a footnote that it was aware that risks are posed by tooth loss which may result from the most common form of periodontal disease, gingivitis. The court further indicates that periodontal diseases are believed to sometimes contribute to cardiac conditions and/or blood infections. *Farnam*, 394 F.3d 469, 480 (7th Cir. 2005). However, the facts in this case are distinguishable from *Farnam* and *Wynn*.

In this case, there is no dispute that Mr. Stevenson presented to the dentist, Dr. Scholz, in July of 2006 with complaints concerning his gums. At that time, Dr. Scholz diagnosed Mr. Stevenson as having periodontal disease in the form of moderate gingivitis. He did not consider Mr. Stevenson's condition to be emergent and has indicated by and through his Affidavit that the condition as presented to him on that date did not constitute a Category 1 condition. Mr. Stevenson's gingivitis did not pose a risk of substantial harm. In addition, Dr. Scholz advised Mr. Stevenson that his recommendation for treatment was a dental cleaning, which he was not in a position to provide given that there were many other patients who were in need of dental care that he would consider to be of a more emergent nature pursuant to the Administrative Directives of the Department of Corrections. These Administrative Directives from the Department of Corrections categorize dental needs and conditions as Levels 1 through 6. (See Administrative Directives applicable to inmates within the Illinois Department of Corrections attached to Defendants' Summary Judgment Motion [39] as Exhibit 2.) These Administrative Directives require that dental care be provided in the order of seriousness. The Plaintiff has presented no medical evidence to indicate that his form of gingivitis had risen to a level that posed a threat of serious harm to his present health or to his future health.

Subsequent to the initial visit with Dr. Scholz, Dr. Scholz eventually did provide a root scaling and planing procedure to address Mr. Stevenson's condition. Dr. Scholz advises the court that in general, dentists do not provide dental cleanings, which take a significant amount of time, when there are other patients who have more serious problems that need to be addressed. Unfortunately, inmates tend to have many needs given their poor dental hygiene as a group. The Plaintiff in this case admits in his deposition that after he received the root scaling and planing, he had no further problems relating to his gums. Mr. Stevenson did not lose any of his teeth and did not suffer from any medical conditions attributable to his gingivitis. Although Plaintiff suggested that he had headaches which he may have attributed to his gingivitis, neither the medical physician nor Dr. Scholz attributed Plaintiff's complaints to the dental issues. In fact, Dr. Scholz did not believe the patient's medical complaints were in any way related to his dental issues. Dr. Scholz saw Mr. Stevenson on a limited number of occasions with respect to his complaints. Dr. Scholz provided Mr. Stevenson with accurate information concerning his diagnosis and the severity of his condition as compared to the problems of other inmates within the facility. Mr. Stevenson's claim is based upon his preference that his moderate gingivitis be treated immediately in a fashion that he prefers. Inmates, however, are not entitled to receive a specific course of care. The Eighth Amendment prohibits cruel and unusual punishment. It does not mandate that prisoners be provided with the best treatment available or the treatment of their choosing. *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995).

The Plaintiff has no evidence to indicate that the condition of his gums constituted a serious medical need.  Plaintiff was deficient in brushing his teeth. Poor dental hygiene may lead to bleeding gums. Bleeding gums do not suggest the patient has a serious medical need.  The patient may have a medical condition in the form of gingivitis. This does not automatically suggest a serious condition. It also does not mean that the individual requires any particular course of care at all given points in time. Dr. Scholz indicated that at the time he evaluated the patient, he did not believe that Plaintiff was at serious risk of harm as a result of that condition. The condition was not emergent and did not require that the patient be sent out for emergent care at that time. When the patient's condition worsened, Dr. Scholz determined that action was necessary and he took it.   Based on the foregoing, the court finds that the plaintiff did not suffer from a serious medical need.  Therefore, Dr. Scholz is entitled to summary judgment as a matter of law.

The court now turns to remaining defendants' summary judgment motion [36].  The court notes that the Plaintiff claims that the remaining defendants, Zimmerman, Walker, Ford, Fuqua, Goins, and VanStrien were deliberately indifferent to his medical needs because they "had the power and opportunity to intervene and correct and/or remedy said claims of medical dental care yet did not." (Complaint, ¶2).  Aside from this statement, Plaintiff does not assert specific allegations as to how Defendants were deliberately indifferent to his medical needs.  Because the Plaintiff has failed to establish that he had a serious medical need as to his gingivitis condition, his claim fails against these defendants also.  They are entitled to summary judgment.

IT IS THEREFORE ORDERED:

1. The Defendants' summary judgment motions [36] and [39] are allowed.  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated.  Any remaining matters are rendered moot.  The parties are to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 23rd day of March 2009.

**s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge